UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLABORATIVE AGREEMENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED, et al.,<br><br>Defendants. | Case No. 15-cv-03853-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Docket No. 93 |

Plaintiff has filed suit against Defendants, asserting claims for patent infringement. Currently pending before the Court is Defendants' motion for reconsideration. In the motion, Defendants ask the Court to reconsider the construction of certain patent terms. Having considered the parties' briefs, the oral argument presented at the hearing on November 9, 2015, and all other evidence of record, the Court hereby **DENIES** Defendants' motion.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiff initiated this lawsuit in the Western District of Texas, asserting that Defendants infringe at least one claim of the '393 patent. *See* Docket No. 1 (complaint). The Texas court issued its claim construction order for the '393 patent in May 2015. *See* Docket No. 84 (claim construction order). In construing certain patent terms, the court relied, *inter alia*, on the Federal Circuit panel decision in *Williamson v. Citrix Online, LLC*, 770 F.3d 1371 (Fed. Cir. 2014). Subsequently, the Federal Circuit vacated the *Williamson* panel decision and reconsidered the case en banc. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). In vacating the *Williamson* panel decision, the en banc court Federal Circuit's reversed a line of cases which had imposed a "strong" presumption against the application of 35 U.S.C. § 112 ¶ 6 whenever the term "means" is not used in the claim.

United States District Court<br>For the Northern District of California

1        After the en banc decision issued, Defendants filed the currently pending motion in which

2 they ask for certain patent terms to be reconstrued in light of the en banc decision.  The district

3 court in Texas, however, did not rule on the motion because it transferred the case to this Court.

4 *See* Docket No. 101 (transfer order).  That motion for reconsideration is now before this Court.

5        Defendants' motion asks for reconsideration of two terms in the '393 patent:  (1) the "code

6 segment" terms of claims 25 and 36, and (2) the "computer readable medium encoded with a

7 computer program" terms in claims 49 and 60.  Claims 25 and 49 are representative claims and are

8 reproduced below.

> 25. A non-transitory computer readable medium encoded with a computer program for facilitating a transaction between two or more parties comprising:
>
> a *code segment* for receiving one or more electronic documents and an identity validation at a server computer via a network from a client communications device of a first party to the transaction
>
> wherein (a) the client communications device comprises a computer, a workstation, a personal data assistant, an Internet-enabled phone or a wireless communications device, (b) all of the one or more electronic documents are locked against future changes, and (c) the identity validation of the first party indicates that the first party has agreed to the one or more electronic documents;
>
> a *code segment* for receiving registration information at the server computer via the network from the client communications device of a second party to the transaction wherein the registration information comprises the identity validation of the second party;
>
> a *code segment* for assigning the transaction to an account on the server computer that is accessible via the network;
>
> a *code segment* for posting the received electronic documents to the account on the server computer such that the client communications device of the second party can access the posted electronic documents via the network;
>
> a code segment for providing the second party with access to the received electronic documents; and
>
> a *code segment* for whenever an acceptance of any of the one or more electronic documents is received by the server computer from the client communications device of the second party, attaching the identity validation from the first party and the second party to the accepted one or more electronic documents.
>
>     . . . .

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

49. A system for facilitating a transaction between two or more parties comprising:

a network interface;

one or more data storage devices;

one or more processors communicably coupled to the network interface and the data storage devices; and

*a non-transitory computer readable medium encoded with a computer program communicably coupled to the processors to*

(a) receive one or more electronic documents and an identity validation via the network interface from a client communications device of a first party to the transaction

wherein (i) the client communications device comprises a computer, a workstation, a personal data assistant, an Internet-enabled phone or a wireless communications device, (ii) all of the one or more electronic documents are locked against future changes, and (iii) the identity validation of the first party indicates that the first party has agreed to the one or more electronic documents,

(b) receive registration information at the server computer via the network from the client communications device of a second party to the transaction wherein the registration information comprises the identity validation of the second party,

(c) assign the transaction to an account on the server computer that is accessible via the network,

(d) post the received electronic documents to the account on the server computer such that the client communications device of the second party can access the posted electronic documents via the network;

(e) provide the second party with access to the received electronic documents, and

(f) whenever an acceptance of any of the one or more electronic documents is received by the server computer from the client communications device of the second party, attaching the identity validation from the first party and the second party to the accepted one or more electronic documents.

Docket No. 1-1, at 24–26 ('393 patent) (emphasis added).

In its claim construction order, the Texas court rejected Defendants' contention that the

"code segment" and "computer readable medium encoded with a computer program" terms are means-plus-function terms subject to 35 U.S.C. § 112 ¶ 6.  Because of the *Williamson* en banc decision, Defendants contend that this conclusion was erroneous and that the terms should now be deemed means-plus-function terms.

## II.   DISCUSSION

As a preliminary matter, Defendants' motion for reconsideration is proper given the *Williamson* en banc decision, which changed the analysis of means-plus-function claims upon which the Texas court relied herein.  Applying the then-applicable "strong" presumption that a limitation lacking the word "means" is not subject to § 112 ¶ 6, the *Williamson* panel found that the term "module" was not a means-plus-function term.  The district court in Texas relied heavily on the *Williamson* panel decision by applying the Federal Circuit's analysis of "module" to the "code segment" term in this case, finding § 112 ¶ 6 not applicable.  *See* Docket No. 84 (claim construction order).  Reversing the panel decision, the en banc court in *Williamson* held that the presumption against applying § 112 ¶ 6 is not "strong" and that "module" *was* a means-plus-function term.  *See Williamson*, 792 F.3d at 1349–51.  Given the Texas court's reliance on the panel decision which was subsequently reversed, reconsideration is appropriate.  On reconsideration, however, the Court finds Defendants' substantive arguments unpersuasive.

Means-plus-function claiming is authorized by 35 U.S.C. § 112 ¶ 6 (currently § 112(f)), which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6.  As indicated by the language above, "[m]eans-plus-function claiming involves a quid pro quo."  *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012).  That is, "[i]n exchange for being able to draft a claim limitation in purely functional language, '[t]he applicant must describe in the patent specification some structure which performs the specified function.'"  *Id.*  Moreover, the description of the structure must be definite.  "'[A]

4

means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim.'" *Id.* at 1312.

In the instant case, the threshold question is whether the claim terms at issue are, in fact, means-plus-function limitations. To determine whether a term is a means-plus-function limitation, a court first looks to whether the claim term uses the word "means." *See Williamson*, 792 F.3d at 1349. If so, then the claim term is presumed to be a means-plus-function limitation. *See id.* If, however, the claim term does *not* use the word "means," then the term is presumed *not* to be a means-plus-function limitation. *See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703 (Fed. Cir. 1998) (noting that "'the use of the term "means" has come to be so closely associated with "means-plus-function" claiming that it is fair to say that the use of the term "means" . . . generally invokes [§ 112, ¶ 6] and that the use of a different formulation generally does not'"). The latter presumption applies here because the challenged claim terms do not include the word "means."

This presumption, however, is rebuttable. The party challenging the presumption against § 112 ¶ 6 has the burden of showing that the claim term fails to recite sufficiently definite structure. *See Williamson*, 792 F.3d at 1348. The *Williamson* en banc court held the presumption against § 112 ¶ 6 may be overcome where "the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *See id.* at 1349. Section 112 ¶ 6 applies if the claim term fails to "'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that structure.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

The challenging party may provide intrinsic or extrinsic evidence as proof of what a person of ordinary skill in the art understands. *See Personalized Media*, 161 F.3d at 703–04 (listing as examples the patent itself and the prosecution history as well as dictionary definitions). Extrinsic evidence, such as dictionaries, provide useful and objective resources for determining the meaning of terms as understood by persons of ordinary skill in the relevant art. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002). However, the intrinsic record provides

**United States District Court**
For the Northern District of California

1   the "most reliable guide to help the court determine which of the possible meanings of the terms in

2   question was intended by the inventor to particularly point out and distinctly claim the invention."

3   *Id.*; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862–63 (Fed. Cir. 2004) (stating

4   that *Texas Digital* did not hold extrinsic evidence trumps intrinsic evidence, but that consulting

5   dictionaries as the initial step in determining the meaning of a term helps avoid improperly narrow

6   constructions).  Expert testimony cannot "create structure where none otherwise is disclosed."

7   *Williamson*, 792 F.3d at 1351.

8   A.      "code segment"

9          Claim 25 is a representative claim for the "code segment" term.

10

11          25.     A non-transitory computer readable medium encoded with a
               computer program for facilitating a transaction between two or more
12             parties comprising:

13                  a *code segment* for receiving one or more electronic
                    documents and an identity validation at a server computer
14                  via a network from a client communications device of a first
                    party to the transaction

15                  wherein (a) the client communications device comprises a
                    computer, a workstation, a personal data assistant, an
16                  Internet-enabled phone or a wireless communications device,
                    (b) all of the one or more electronic documents are locked
17                  against future changes, and (c) the identity validation of the
                    first party indicates that the first party has agreed to the one
18                  or more electronic documents;

19                  a *code segment* for receiving registration information at the
                    server computer via the network from the client
20                  communications device of a second party to the transaction
                    wherein the registration information comprises the identity
21                  validation of the second party;

22                  a *code segment* for assigning the transaction to an account on
                    the server computer that is accessible via the network;

23
                    a *code segment* for posting the received electronic
24                  documents to the account on the server computer such that
                    the client communications device of the second party can
25                  access the posted electronic documents via the network;

26                  a *code segment* for providing the second party with access to
                    the received electronic documents; and

27
                    a *code segment* for whenever an acceptance of any of the one
28                  or more electronic documents is received by the server

6

computer from the client communications device of the second party, attaching the identity validation from the first party and the second party to the accepted one or more electronic documents.

Docket No. 1-1, at 24 ('393 patent, claim 25).

Because the "code segment" term does not use the word "means," the Court presumes that the term is not a means-plus-function limitation, and it is Defendants' burden to prove otherwise – *i.e.*, to show that a person of ordinary skill in the art would not understand the term to have a sufficiently definite meaning as the name for structure. *See Williamson*, 792 F.3d at 1348.

At the hearing, Defendants basically conceded that they were not making an argument that anytime software is implicated in a term, the term is a means-plus-function limitation. Defendants argued, nevertheless, that, without enough information about how the software operates, the use of the term "software," or something akin to that term, essentially becomes function claiming and fails to recite a "sufficiently definite structure." *Id.* at 1349.

The Court is not persuaded. First, the term "code segment" suggests some kind of structure as evidenced by the dictionary definition provided by Plaintiff. *See* Docket No. 77-2, at 6–8 (Plaintiff's Exhibits). The *Microsoft Press Computing Dictionary* 96 (3d. 1997), provided by Collaborative, defines "code segment" as:

> 1. A memory segment containing program instructions. 2. A named and segregated portion of a program's code typically performing a specific class of operations. Code segments in this sense are often loaded into memory as memory segments. The main program segment is kept in memory, and auxiliary segments are loaded only when they are required.

Docket No. 77-2, at p. 6 (Plaintiff's Exhibit A).

Moreover, the claim language here provides a description as to how the code segment operates. The language in claim 25, does not simply describe broadly phrased high-level functions such as "receiving communications" or "coordinating the operation of the streaming data module," as in *Williamson*. *See id.* at 1344. Instead, claim 25 describes the objective and operation of the code segment as "receiving one or more electronic documents and an identity validation at a server computer," while also describing the structural interactions among the

7

computer program's code segment components:  "code segment for receiving one or more electronic documents . . . code segment for posting the received documents . . . code segment for providing the second party with access to the received documents . . . ."  *See* Docket No. 1-1, at 24 ('393 patent).

In this regard, the Court finds *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004), instructive.[1]  In *Linear*, the Federal Circuit rejected the contention that held that challenged term "circuit" was a means-plus-function limitation.  The challenged claim in *Linear* was as follows:

> 1.   A **circuit** for *controlling a switching voltage regulator* . . . the control circuit comprising:
>
>       a first **circuit** for *monitoring* a signal from the output terminal to *generate* a first feedback signal;
>
>       a second **circuit** for *generating* a first control signal during a first state of circuit operation, the first control signal being responsive to the first feedback signal to vary the duty cycle of the switching transistors to maintain the output terminal at the regulated voltage; and
>
>       a third **circuit** for *generating* a second control signal during a second state of circuit operation to cause both switching transistors to be simultaneously OFF for a period of time if a sensed condition of the regulator indicates that the current supplied to the load falls below a threshold . . . .

*Id.* (emphasis added).

The *Linear* court began its analysis by consulting dictionary definitions:

> "Technical dictionaries, which are evidence of the understandings of persons of skill in the technical arts, plainly indicate that the term 'circuit' connotes structure.  For example, *The Dictionary of Computing* 75 (4th ed. 1996) defines "circuit" as "the combination of a number of electrical devices and conductors that, when interconnected to form a conducting path, fulfill some desired function."  Thus, when the structure-connoting term "circuit" is coupled with a description of the circuit's operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art, and § 112 ¶ 6 presumptively will not apply.

---

[1] As a pre-*Lighting World* (which established the "strong" presumption) case, *Linear* followed the appropriate standard for overcoming the presumption against § 112 ¶ 6.

United States District Court

For the Northern District of California

1  *Id.* at 1320.

2     The *Linear* court then concluded that there was a sufficient description of the circuit's

3  operation in the claim language itself:

5     Claim 1 recites: "a first circuit for monitoring a signal from the
       output terminal to generate a first feedback signal." '178 patent, col.
6     16, ll. 42-43.  The contextual language describes the objective of the
       "circuit," "monitoring a signal from the output terminal," and the
       desired output of the "circuit," "generat[ing] a first feedback signal."
7     The "second circuit" and "third circuit" limitations in claim 1 are
       accompanied by similar language reciting their respective objectives
8     or operations.  *See id.* at col. 16, ll. 44-57.  That persons of ordinary
       skill in the art would understand the structural arrangements of
9     circuit components from the term "circuit" coupled with the
       qualifying language of claim 1 was recognized by Linear's expert
10    witness.

11 *Id.*  Thus, the court held § 112 ¶ 6 did not apply because the claim language recited the respective

12 circuit's operation in sufficient detail to avoid means-plus-function treatment.  *Id.* at 1320–21.

13    In the instant case, the level of specificity in describing the operations of "code segment" is

14 similar to that described for "circuit" in *Linear*.  And, it is more specific than the description of the

15 operation of "distributed learning module" in *Williamson*.  In *Williamson*, the claim term read:

17    a distributed learning control module for receiving communications
       transmitted between the presenter and the audience member
18    computer systems and for relaying the communications to an
       intended receiving computer system and for coordinating the
       operation of the streaming data module.

20 *Williamson*, 792 F.3d at 1344.  The en banc court concluded the challenged term did not connote

21 sufficient structure and thus should be deemed a means-plus-function claim.  *See id.* at 1349–51.

22 The challenged term "module" was a "well-known nonce word" with no structural meaning, and

23 the prefix language – "distributed learning control" – added no structural meaning.  *See id.*

24 Furthermore, the description of the module's outputs and inputs – *e.g.*, "communications between

25 the presenter and audience member computer systems" – did not impart any structural significance

26 because the description failed to indicate how the module interacted "with other components . . . in

27 a way that might inform the structural character of the limitation-in-question or otherwise impart

28 structure to the 'distributed learning control module' as recited in the claim";  the court

9

**United States District Court**
For the Northern District of California

characterized this description as being only "at a very high level." *Id.* at 1351.  As such, there was no evidence that suggested the "module" was anything but a "generic 'black-box'" for achieving the claimed functions.  *Id.* at 1350.

In this case, "code segment" has some structural meaning, as supported by the dictionary definition tendered by Plaintiff; code segment is not a nonce word.  In addition, the claim language describes the code segment's operation with a degree of specificity not present in *Williamson*.  This case is more similar to *Linear* than *Williamson*.

At the hearing, Defendants argued that *Linear* is distinguishable because a "circuit" in *Linear* is clearly hardware, and software (as here) is different from hardware in that, with software, there is an element of creativity – *i.e.*, there are infinite ways to build or at least many different ways of doing things.  At the hearing, Defendants argued that more specificity about the operation of the software was needed in order for it to convey sufficiently definite structure to a person of ordinary skill in the art.  For example, for the term "a code segment for receiving one or more electronic documents and an identity validation at a server computer," Defendants argued that specificity was needed as to how exactly the "receiving" was done – *e.g.*, through a "get" request.  As another example, for the term "a code segment for . . . attaching the identity validation from the first party and the second party to the accepted one or more electronic documents," Defendants contended that there are multiple ways to affirmatively identify – *e.g.*, through sound, through a link, or through meta-data even.

But requiring the patent to describe precisely how the claimed functions are achieved or how a person of ordinary skill in the art could make and use the invention goes beyond the threshold trigger for the application of § 112 ¶ 6.  As Plaintiff argued at the hearing, Defendants' argument here sounds more in the nature of enablement or disclosure of corresponding structure where it has already been determined that a term is a means-plus-function limitation, not the threshold question whether § 112 ¶ 6 applies in the first place.  *Cf. Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008) (stating that, "if a claim *includes* a means-plus-function limitation, failure to disclose adequate structure corresponding to the claimed function results in the claim being invalid for indefiniteness[;] [w]hether the written description

**United States District Court**
For the Northern District of California

adequately sets forth structure corresponding to the claimed function must be considered from the perspective of a person skilled in the art") (emphasis added); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1336 (Fed. Cir. 2008) (in evaluating a claim that *was* a means-plus-function limitation, stating that "[w]hether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here"; "[e]nablement of a device requires only the disclosure of sufficient information so that a person of ordinary skill in the art could make and use the device" while "[a] section 112 paragraph 6 disclosure . . . serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents") (emphasis added).

Defendants also argued at the hearing that the more ways there are of accomplishing the claimed function, the less structure the claim term connotes to a person of ordinary skill.  As above, this proposition is unsupported by case law.  The challenged term may connote a type of structure; it need not specify a particular individual structure.  *See Personalized Media*, 161 F.3d at 705 (holding that "detector" connotes sufficiently definite structure because even though "detector" did not specifically evoke a particular structure, it conveyed to person of ordinary skill in the art, a variety of structures known as "detectors.").  Disclosure of corresponding structure applies only if a court holds that § 112 ¶ 6 applies.  *See Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) ("The duty of a patentee to clearly link or associate structure with the claimed function is the quid pro quo for allowing the patentee to express the claim in terms of function under section 112, paragraph 6.").  The two inquiries are distinct.

It is true that when a limitation *is* a means-plus-function limitation, and the corresponding structure is software, there needs to be an algorithm for the software or else the means-plus-function limitation will be considered indefinite unless the function can be performed by a general purpose computer.  *See Aristocrat*, 521 F.3d at 1332–31 (holding that the corresponding disclosure for a computer-implemented means-plus-function claim is an algorithm).  But that authority is not on point because that definiteness analysis is triggered only where the limitation *is* a means-plus-function limitation.

11

**United States District Court**
For the Northern District of California

In essence, Defendants are asking that the level of specificity needed to avoid means-plus-function claiming is equivalent or at least close to the level of specificity needed to avoid an indefiniteness problem (35 U.S.C. § 112 ¶ 2).  But courts have cautioned that the two should not be conflated.  *See E2E Processing, Inc. v. Cabela's Inc.*, No. 2:14-CV-36-JRG-RSP, 2015 WL 4051423, at *7 (E.D. Tex. July 2, 2015) (stating that defendant's argument "improperly conflates the issue of whether a term is a means-plus-function term with the issue of whether the specification discloses corresponding structure for a term that has been found to be a means-plus-function term"); *Wi-Lan USA, Inc. v. Alcatel-Lucent USA, Inc.*, No. 12-23568-CIV, 2013 WL 4811233, at *40 (S.D. Fla. Sept. 9, 2013) (finding that *Aristocrat* was not applicable because the standard to prove sufficient structure is different from the standard used to identify corresponding structure); *Markem-Imaje Corp. v. Zipher Ltd.*, No. 10-CV-112-PB, 2011 WL 5837087, at *4 n.7 (D.N.H. Nov. 21, 2011) (finding that "controller" was sufficiently structural to escape means-plus-function treatment and that the algorithm requirements of *Aristocrat* did not apply because *Aristocrat* involved a party who *intended* to invoke § 112 ¶ 6 by using the term "means" in the claim); *see also WhitServe LLC v. GoDaddy.com, Inc.*, 65 F. Supp. 3d 317, 320 (D. Conn. 2014) (mentioning that the Federal Circuit has not required non-means-plus-function software claims to describe an algorithm, but not discussing the issue further).

At bottom, although the presumption against § 112 ¶ 6 is no longer "strong," it is still a presumption that the Defendants must affirmatively overcome.  *See M2M Solutions LLC v. Sierra Wireless Am., Inc.*, No. CV 12-30-RGA, 2015 WL 5826816, at *2 (D. Del. Oct. 2, 2015) (on a motion for reconsideration based on *Williamson*, holding that Defendants failed to overcome the presumption against § 112 ¶ 6 because they did not provide evidence to show that "programmable interface" failed to connote sufficiently definite structure).  Defendants have failed to do so here. Accordingly, the Court grants Defendants' motion to reconsider, but affirms the Texas district court's conclusion that the term "code segment" is not a means-plus-function limitation.

B.    <u>"computer readable medium encoded with a computer program"</u>

The second challenged term, in full, is "a non-transitory computer readable medium encoded with a computer program communicably coupled to the processors to."  Claim 49 is a

12

representative claim containing the term:

> 49.     A system for facilitating a transaction between two or more parties comprising:
>
> a network interface;
>
> > one or more data storage devices;
> >
> > one or more processors communicably coupled to the network interface and the data storage devices; and
> >
> > *a non-transitory computer readable medium encoded with a computer program communicably coupled to the processors to*
> >
> > (a) receive one or more electronic documents and an identity validation via the network interface from a client communications device of a first party to the transaction
> >
> > wherein (i) the client communications device comprises a computer, a workstation, a personal data assistant, an Internet-enabled phone or a wireless communications device, (ii) all of the one or more electronic documents are locked against future changes, and (iii) the identity validation of the first party indicates that the first party has agreed to the one or more electronic documents,
> >
> > (b) receive registration information at the server computer via the network from the client communications device of a second party to the transaction wherein the registration information comprises the identity validation of the second party,
> >
> > (c) assign the transaction to an account on the server computer that is accessible via the network,
> >
> > (d) post the received electronic documents to the account on the server computer such that the client communications device of the second party can access the posted electronic documents via the network;
> >
> > (e) provide the second party with access to the received electronic documents, and
> >
> > (f) whenever an acceptance of any of the one or more electronic documents is received by the server computer from the client communications device of the second party, attaching the identity validation from the first party and the second party to the accepted one or more electronic documents.

Docket 1-1, at 25 ('393 patent) (emphasis added); *see also* Docket No. 84, at 28 (claim

United States District Court

For the Northern District of California

13

construction order).  As indicated by the language above, claim 49 is quite similar to claim 25.

Although claim 49 does not use the term "code segment," it uses the term "computer program" (as

does claim 25), and therefore software is still implicated.  Both parties, as well as the Texas court,

have acknowledged this similarity.

As a starting point, the Court notes that, because the term "computer readable medium

encoded with a computer program" lacks the word "means," the term is, presumptively, not a

means-plus-function limitation, and Defendants bear the burden of proving otherwise.  As above,

the Court concludes that Defendants have failed to meet this burden.  Given the similarity between

claims 49 and 25, the analysis for the "code segment" term is largely applicable here – *i.e.*,

software has some structural meaning, and the surrounding claim language provides sufficient

specificity as to how the software operates.  Moreover, there is even a stronger case here that

*Linear* is on point because a "computer readable medium encoded with a computer program"

implicates not only software but also hardware; thus, there is a stronger analogy to the "circuit" at

issue in *Linear*.

## III.   CONCLUSION

For the foregoing reasons, even after the en banc *Williamson* decision, the Court concludes

that the claim terms at issue – *i.e.*, "code segment" and "computer readable medium encoded with

a computer program" – are not means-plus-function terms.

This order disposes of Docket No. 93.


**IT IS SO ORDERED**.


Dated: December 2, 2015

_____
EDWARD M. CHEN
United States District Judge