**Pages 1 - 20**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

COLLABORATIVE AGREEMENTS, LLC, )
D/B/A OUI AGREE,                )
                                )
       Plaintiff,           )
                                )
  VS.                           )    **NO. C 15-03853 EMC**
                                )
ADOBE SYSTEMS INCORPORATED, *et* )
*al.*,                           )
                                )
       Defendants.          )
_____)

San Francisco, California
Thursday, March 24, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff Collaborative Agreements, LLC:
              Nix Patterson Roach, LLP
              1845 Woodall Rodgers Freeway
              Suite 1050
              Dallas, TX  75201
              (972) 831-1188
              (972) 444-0716 (fax)
        **BY:  JASON ALAN BLACKSTONE**

For Plaintiff Collaborative Agreements, LLC:
              Hudnell Law Group, PC
              800 W. El Camino Real, Suite 180
              Mountain View, CA  94040
              (650) 564-7720
              (347) 772-3034 (fax)
        **BY:  LEWIS EMERY HUDNELL, III**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

<u>**APPEARANCES**</u>:

For Defendant Adobe Systems Incorporated:
                        Fish & Richardson
                        225 Franklin Street
                        Boston, MA   02110-2804
                        (617) 542-5070
                   **BY:   FRANK E. SCHERKENBACH**

<u>**Thursday - March 24, 2016**</u>                                        **2:27 p.m.**

**P R O C E E D I N G S**

**---000---**

THE CLERK:  Calling Case C. 15-3853, Collaborative Agreements versus Adobe.  Counsel, please come to the podium and state your name for the record.  Counsel, please state your name for the record.

MR. BLACKSTONE:  Jason Blackstone and Lewis Hudnell, for plaintiff Collaborative Agreements.

MR. SCHERKENBACH:  Fish Richardson, for Adobe.

THE COURT:  All right.  Thank you, counsel.

We're on for defendant's motion for summary adjudication as to the effective Priority Date of the '393 Patent.  And in this case, we have a situation where in the infringement contentions the effective date was clearly staked out, and with a date that said no "later than April 2nd 2002," which I guess is the date of the filing of the application for the '578.  Is that right?

MR. BLACKSTONE:  That's correct.

THE COURT:  Which would take out of play the '540, the '151, the '929, and the '172 application.

And I understand, you know, at least under our Local Rules, there's got to be shown good cause to amend contentions. And the Court looks at two things, obviously:  Diligence and prejudice.  But the law is also clear, at least in our Court,

that if there's not diligence, I have the authority not to inquire into prejudice.  It's not necessary.

I think courts have gone both ways in exercising their discretion.  Sometimes it gives some dispensation where there's been no prejudice; but I will say that the cases usually involve, when they examine these situations, things where there is, quote, an "honest mistake," an "obvious mistake," an "administrative mistake," where there was -- you know, somebody just transposed something, looked at the wrong document, et cetera, et cetera.

Here, this is not that kind of mistake.  I mean, this was something that was clearly set forth, for whatever reason.  And I've seen nothing in the papers that explains any excuse why, if the later dates were not -- why the plaintiff did not identify the applications for the '172, the '151, and the '540.

And so this looks like, for whatever reason, the plaintiff states -- states its ground and put its eggs in that basket. So why should the Court give some dispensation at this point? I mean, that's my question.

**MR. BLACKSTONE:**  Okay.  So I think that initially the Local Rules don't change the facts of the case.  There are other priority documents to which the patent is enabled.  The original filing date was meant to put the defendants on notice that we were going to use the priority documents that were cited on the face of the patent.  And that's the reason that we

cited to the earliest priority document in our disclosures.

THE COURT:  Say that again.  I'm not sure I understand why -- why it was claimed in the infringement contentions that the date was no later than 2002.  I'm not sure I understand what their reason is.

MR. BLACKSTONE:  Yeah.  I don't think that the first filed document thought that citing to the first priority document in the five documents that were cited on the face of the patent -- thought that that would proscribe us from being able to rely upon the later priority documents that we chose.

THE COURT:  So it was just a mistake?

MR. BLACKSTONE:  I think so.  Yes.

THE COURT:  Well, what's your response to that?

MR. SCHERKENBACH:  Well, I think if you take a step back and look at how this issue first arose, you can't really conclude there was a mistake.  As we pointed out in our papers, first of all, the case had been pending almost two years.  We raised this issue when the case was back in Texas more than a year ago in the context of the claim-construction proceedings there.  And, in fact, it was briefed and argued to the Texas Court.  This --

THE COURT:  When you say "this" -- what was briefed and argued?

MR. SCHERKENBACH:  The priority issue, essentially.

THE COURT:  All right.

**MR. SCHERKENBACH:** Whether the claims -- Asserted Claims -- were entitled to any priority earlier than the 2011 filing, because in construing various disputed claims, there was an attempt to rely by both sides on some of those -- particularly the plaintiffs -- on some of the matters added in 2011. So the issue was before the Court.

And the only reason the Texas Court didn't decide it as substantively was that the parties ultimately stipulated to a construction of this phrase "identity validation" that didn't require the Court to deal with the priority issue.

So the Court said, *It looks to me like there was a whole bunch of new material added in 2011, but I don't have to address that issue, even though it's been briefed*.

The relevance of that here is it makes it, with all due respect -- it's an overused term -- a little bit of a poster-child case, where they have been on notice of this for a long time. And they put a stake in the ground here, choosing an even earlier date of 2002. No one knows why they did this. We certainly don't know why they did that, but it was clearly a deliberate decision.

**THE COURT:** Well, on the other hand, the briefing before the Texas Court suggests the debate was not what happened in 2011. Right?

**MR. SCHERKENBACH:** I'm sorry. Suggests what, Your Honor?

**THE COURT:**  The debate was what happened in -- with respect to the '053.

**MR. SCHERKENBACH:**  Right.

**THE COURT:**  Right?  There was no discussion about the '578, which is the 2002 is the original.

**MR. SCHERKENBACH:**  Well, at that point --

**THE COURT:**  The '578.  So it didn't seem to come into play in your discussions on claim construction before the Texas Court.

**MR. SCHERKENBACH:**  Oh, but -- true, Your Honor, though, with a pretty important footnote:  Only because, even in Texas, the plaintiff -- the plaintiff didn't even try to rely on these 2002 provisional applications there; and in particular, the '578 provisional, which was the first one filed.

I mean, it so obviously lacks any support for the Asserted Claims, they didn't even take that position in Texas.  They chose to argue or rely on a 2003 application -- a utility application -- which at least has some more disclosure, but still not nearly enough, in our view.

But my point is that -- is that the issue of what priority was appropriate for the Asserted Claims was presented, front and center.  And so they have been on notice of this.  They have been on notice.  It's been contested.

The rulings of this Court are well known in this area.

And, in fact, Your Honor, I don't have to tell you, but several of the cases on this issue in your Court point out that priority -- above all issues, priority, in particular, is uniquely within the possession of the plaintiff.  It's not like they needed discovery from Adobe or from some third party to understand what their priority claim is going to be.

You know, the only argument they might have had is, *Well, until the claims were construed, maybe we didn't know what priority claim to make*, but the claims were construed a year ago.  And they came into this Court knowing the rules and knowing the requirements; knowing the claims as construed.  And they picked this provisional application in 2002.

So this is -- this is a straightforward application of just enforcing the rule.

THE COURT:  Well, so, number one, it is no surprise, essentially, that that Priority Date is an issue in this case. You had ample opportunity to choose the right Priority Date. And I guess I'm still at a loss as to your explanation.  It still doesn't say why.  It says "no later than."  It just doesn't say "is," or "on or around."  It just says "no later than."  That's pretty specific.

MR. BLACKSTONE:  It is, Your Honor.  I think it was meant to identify that the first priority document was the -- that we were not going to seek any priority, you know, other than the priority documents that were listed on the face of the

patent.

I think that the Judge did point out something important; that the defendant's motion could be made without any reliance upon the early priority documents.  They pled what they intended to file was their motion for summary judgment during the claim-construction process.  And that compared the disclosures that were in the 2011 application to the matter that was added during that process.  There was no reliance upon the earlier priority documents in their arguments.

So we think that the priority arguments in their -- the priority argument in their motion is largely a sideshow; it doesn't get to the merits; and that the -- the date asserted by the -- the Priority Date assertions by the defendants in order to try and disclaim the rest the priority documents on the face of the document don't apply to their argument.

THE COURT:  I mean, I'm equally puzzled, because the date of the claim construction, as you know, was May of the year before.  The briefing was in February of 2015.  And the infringement -- or the contentions here was in January of this year 2016, well after, you know, all the various discussions and briefing and resolution.

So, you know, it seems to me that, you know, there's no reason.  There wasn't like an intervening claim construction or something that developed.

And so, you know, at the end of the day, frankly, if

infringement -- if our contentions process is to be given any real meaning, it seems to me that, absent an obvious mistake which should have been known to both sides, et cetera, et cetera, you know, this seems like a deliberate statement.

Maybe -- I don't know if it was a tactical error or something else, but it actually -- you know, it says "no later than," for whatever reason.

MR. BLACKSTONE: Right. And the defendants filed their motion three days after we filed our infringement contentions. So there's -- there was no time for us to correct them. We didn't meet and confer with them regarding the contentions that they thought were unclear to them, as to what priority we were going to claim.

THE COURT: And you think that's sort of unfair to rely on an infringement contention and try to move on that?

MR. BLACKSTONE: Well, I think when they asked the Court for early summary judgment on a -- on one theory, and they filed a motion on a different theory, that that is somewhat unfair, yes.

THE COURT: What's your response?

MR. SCHERKENBACH: Well, Your Honor, just on that last point, I'll just point you to the *BioGenex* case as just one example. I mean, that's the way it's actually supposed to work. You know, these Local Rules are designed to streamline the disposition of these cases. The plaintiff takes a

position, as it's required to do.  And the defendant's entitled to rely on the position the plaintiff takes; and particularly so in this case regarding priority, where the issue had been hotly, you know, contested, and raised, and well known for a year beforehand.

Now, you look at the *BioGenex* case.  And, you know, in that situation the Court -- Judge Fogel -- but the Court said, *Right.  The defendant can look at that date; is entitled to rely on that date.  And if they think it's dispositive of the case in some way* -- which we think it is here.  And, in fact, it's not disputed that this date is case dispositive -- that's the way it's supposed to work.

And, indeed, there would be prejudice to Adobe if now you were to allow the plaintiff to get out of that, because here we are.  We've spent this time and effort filing a good motion that would potentially be obviated.  You know, there's a whole nother piece of the motion that we think is not obviated.  We don't necessarily have to go there; but, know, this has been addressed before.

THE COURT:  Can you think of a reason -- a tactical reason -- why plaintiff would have chosen an effective date no later than April 2nd, 2002?

MR. SCHERKENBACH:  Yes.  There is substantial prior art dated in 2003 from another company called "DocuSign."  And actually, the record in this case shows that plaintiff --

plaintiff is well acquainted with DocuSign.  They actually spent a significant effort to try to sell their patent portfolio to DocuSign.  That didn't pan out.  And Adobe had spent a fair amount of time developing DocuSign prior art; produced it to plaintiff.  So they're well aware that there was a -- there was real risk with sticking even with a 2003 date. And so it made perfect sense to us that they chose 2002 for that reason.  Of course, that created other problems for them. And here we are.

But you know, just again, Your Honor, I know you said this, but to go back to the "no later than" language, that affirmatively takes off the table all of these other applications.  No later than.

THE COURT:  So it limits the prior-art problem?

MR. SCHERKENBACH:  Right.

MR. BLACKSTONE:  So in response to that point, Adobe did not put the DocuSign prior art in its invalidity contentions that it served in the interim.  So we don't think that -- I wasn't aware of any DocuSign prior art in 2003 that would be bearing on the case.  I'm not certain anyone else was, either.

And also what we're trying to do here is not expand the Priority Date beyond what we disclosed.  And I think that's what most of the case law cited by the defendants is; is when a plaintiff attempts to change its Priority Date to an earlier

date to read around prior art which it's been made aware of -- we're not doing that.  We're trying to preserve our right to cite to documents later than the date on the face of the patent, and Adobe has been aware of.

And the other follow-up point is that he said that the priority issue has been a point for months, and it was identified during the claim-construction dispute earlier. There was a priority dispute, but as we discussed earlier, it relates to the additions in the 2011 application, and they don't read back to towards the earlier priority documents.

And finally, in the invalidity contentions presented by Adobe, there are no references in between April 2, 2002, and April 2, 2003, which is the utility part of the application. So there's -- from us looking at the invalidity contentions, there's no prejudice to Adobe in allowing us to change our date to a later date.

THE COURT:  You want to respond just to that last point?

MR. SCHERKENBACH:  Well, yes.  If I may, the notion they're not trying to avoid priority art, just so it's not lost here, of course, they're trying to avoid Adobe's own sales of EchoSign in 2009, which they concede would invalidate their patent unless they get an earlier Priority Date.  So -- so --

THE COURT:  Say that again.

MR. SCHERKENBACH:  They have accused Adobe's product,

called "EchoSign."

THE COURT:  Yeah.

MR. SCHERKENBACH:  Their filing date right now is 2011, unless they give an earlier application.

THE COURT:  Yeah.

MR. SCHERKENBACH:  EchoSign was launched in 2009. And if you look at their infringement contentions, they actually accuse EchoSign beginning in 2009.  So this is exactly the *BioGenex* situation, where, if they don't get an earlier date than the one -- than the date of the application at issue in the patent, they're out of luck.

So they are trying to avoid a prior art.  We think they're also trying to avoid DocuSign prior art.  Maybe there's a dispute about that.

THE COURT:  But it's true it's not listed in your invalidity contentions.

MR. SCHERKENBACH:  I actually think there is a reference to DocuSign.  I'm sorry I don't have that document here, Your Honor.  I can't cite you to a page on that.

THE COURT:  Okay.

MR. SCHERKENBACH:  On the prejudice point, which I think was also part of your question, you -- where the Court began, I think, is where we should return on that.  We don't have to show prejudice.  They have to show diligence.  They have to show diligence in discovering the basis for the

amendment.  And they have to show diligence in seeking permission to amend.

They haven't even sought to amend.  That's actually ironic.  You know, they suggest in their papers, *Gee, Judge, if you tell us we need to, we might, if necessary*.  There's this phrase:  If necessary, we will.  They haven't even sought to amend, which makes it even more egregious.

But again, there is prejudice in the form of our having taken them at their word, and the way the rules are supposed to work in having brought this motion.

**THE COURT:**  All right.  I'm going to need to move on, but let me just ask you very quickly.  I don't want to turn this into a full-fledged argument.  What's your strongest argument on the futility question with respect to if it were -- the question of what was not found in the priority documents, even if we were to give some dispensation on the infringement contention, you have several arguments, I understand.  What's your strongest one?

**MR. SCHERKENBACH:**  Well, there are three related arguments, all relating to this identity validation, what it is, and how it's used.  There is no meaningful disclosure of that, whatever, in any application before 2011.  The most the Court will find is a single sentence in the 2003 utility application.

Also in the 2008 utility application, which was a straight

continuation.  That one sentence doesn't begin to support the claims that are all about, actually, the identity validation.

So even if you -- it's a belt and suspenders here, really, Your Honor.  You ought to enforce the rule; but even if you don't, you certainly can find and should find that, as a matter of substance, if you let him amend, it wouldn't matter, anyway.

**THE COURT:**  I'll give you a brief chance to respond.

**MR. BLACKSTONE:**  Okay.  So there are three arguments that the defendant identified in their reply.

**THE COURT:**  Yeah.

**MR. BLACKSTONE:**  There are two linked together.  One is the locking and the agreeing.  There are -- there is disclosure in the 2003 application related to that.  If you --

(Pause in proceedings.)

**MR. BLACKSTONE:**  For the locking element, paragraph 20 on page 8 speaks about when the document is uploaded to a system.  And --

**THE COURT:**  Paragraph 20?

**MR. BLACKSTONE:**  20 of the 2003 application; the '151.  It's on page 8.  And paragraph 20 deals with when the documents are received by the electronic system.  It talks about the types of documents that can be -- that the electronic documents could be loaded to a secured account.  And the last sentence states that, "Moreover, the posting party may block one or more portions of the received documents against future

changes."  So that clearly shows that the patentee --

THE COURT:  What about the identity validation?

MR. BLACKSTONE:  Identity validation goes to the basis of the patent.  One of the key advances of the patent was to allow people to replace a signed document with an electronic document.

There are two elements of that.  The first is that a party registers with the system.  So that way, the system knows who that person is; who they say they are.  And the second is that the system appends a document with an identifier that shows that the party actually agreed to the contract.

THE COURT:  Well, and the earlier applications refer to "electronic signature," which is -- isn't that only one kind of possible kind of identity validation?

MR. BLACKSTONE:  Correct, but a person that was skilled in the art would know that the purpose of that electronic signature is to prove that the person agreed to the document; and that an identity validation is just another equivalent function that served the same purpose that a person skilled in the art would realize is equivalent.

THE COURT:  Well, the claim construction -- there's separate constructions for the term "identity validation," and "electronic signature."

MR. BLACKSTONE:  There is.

THE COURT:  They're defined separately.

**MR. BLACKSTONE:** They are defined separately.  That doesn't mean that they can not overlap.

**THE COURT:** Is overlap enough?  I mean, we're not supposed to apply obviousness in this context.

**MR. BLACKSTONE:** Right.  The -- because the purpose of the system is to prove that the person that read that document was actually a person that agreed to the document -- that there's going to be an electronic stamp affixed to the document.  It's just like a significant in the reel world, or a stamp, or a notary public stamping something -- that the system assigns an identifier to that document that's associated with the person that agreed to it.

**THE COURT:** All right.  What's your view on this question?

**MR. SCHERKENBACH:** Just to take them in reverse order, on this question of electronic signature being an example of an identity validation, the only disclosure of that is in the 2011 new matter.  Yes, the earlier applications refer to an electronic signature.  And separately, there is a reference in one place to an identity validation.  There's no disclosure linking the two, or saying that an identity validation can be an electronic signature, or vice versa.

The only way they get that information, which is critical to the claims, is from the 2011 ad material.

The other point Counsel made was -- he pointed -- on the

idea of locking the document before it's received, he pointed you to a paragraph in the 2003 application.  That's paragraph 20.  And there is disclosure there saying that one or more portions of the received document can be locked -- the received documents can be locked.

First of all, this is a new argument.  It's not in their brief.  You won't find it there.

But second of all, there are two separate claim sets at issue that are asserted with respect to locking.  One claim set says you only have to lock one or more portions as received.  At most, this disclosure would support that element of those claims.  Of course, there are many other elements that are missing.

But there's another claim set, including Claim One of the patent, Your Honor, which is the sample claim that's used in the briefing.  That claim requires the entirety of the document to be locked as received.  And there's no disclosure of that here in the portion Counsel cited you to.

And, in fact, this discussion that he did cite you to is about Figure 2.  And if you look at Figure 2 -- we don't have to step through it now, but if you look at it, it actually says that the documents are locked as they are agreed to by the party.  So there is subsequent locking of other portions of the document as part of the process, which means it is necessarily the case that the entire document is not -- is received.  And

that's what's required by a whole bunch of the Asserted Claims.

THE COURT:  This is Figure 2 of what?

MR. SCHERKENBACH:  Figure 2 of the 2003 application. So that is the '151 utility application, if you look at Figure 2.

THE COURT:  All right.  I will take the matter under submission.  Thank you.

MR. SCHERKENBACH:  Thank you, Your Honor.

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____     April 12, 2016
Signature of Court Reporter/Transcriber    Date
Lydia Zinn