UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLABORATIVE AGREEMENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED, et al.,<br><br>Defendants. | Case No. 15-cv-03853-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION OF THE '393 PATENT'S EFFECTIVE PRIORITY DATE AND INVALIDITY**<br><br>Docket No. 138 |

Plaintiff Collaborative Agreements, LLC (doing business as Oui Agree) ("OA") has filed a patent infringement lawsuit against multiple defendants, including Adobe Systems Incorporated ("Adobe"). The operative complaint is the second amended complaint ("SAC"). In that complaint, OA claims infringement of only one patent, namely, the '393 patent. The parties' papers reflect that the accused product is Adobe's EchoSign technology.

Currently pending before the Court is Adobe's motion for summary adjudication. In the motion, Adobe asks the Court to conclude that the date of invention for the '393 patent is the date that the application for the '393 patent was filed – *i.e.*, November 1, 2011. *See Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986) (stating that the date of invention is "presumed to be the filing date of the application until an earlier date is proved"); *see also In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011) (same). If the Court agrees with that date of invention, then, based on OA's own representations, the EchoSign technology cannot be said to infringe because it was in use prior to November 1, 2011. Adobe admits that OA has asserted an earlier date of invention – *i.e.*, an earlier priority date – but argues that, as a matter of law, that priority claim fails because the invention claimed in the '393 patent was not sufficiently disclosed in the parent application.

1  Having considered the parties' briefs and accompanying submissions, as well as the oral
2  argument of counsel, the Court hereby **GRANTS** Adobe's motion.  The Court further **DENIES**
3  OA's request for leave to amend its infringement contentions so that it may plead a new priority
4  date.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The '393 patent is titled "System and Method for Facilitating Transactions Between Two or More Parties."  Both parties similarly describe the invention claimed by the '393 patent.  For example, Adobe states as follows:

> [F]rom a high level, the asserted '393 patent claims relate to "method[s] for facilitating a transaction between two or more parties" in which electronic documents or agreements are received by a server and are "locked against future changes" when received, "registration information" is likewise received, the transaction is assigned to an account that both parties may access, and, finally, when the documents posted to that account are accepted by the parties, an "identity validation" from each party is "attached" that indicates acceptance.

Mot. at 8.

Similarly, OA states:

> In general, the '393 Patent discloses a system and method for facilitating a transaction between two or more negotiating parties.  A server receives an electronic document from a client communications device.  Either the entire electronic document or its portions can be "locked" against future changes.  A special piece of data – an "identity validation" – can indicate that a party has agreed to the electronic documents.  Once another party accepts the electronic document, its "identity validation" is attached to the electronic document.

Opp'n at 2.

On the first page of the patent, there is a section titled "**Related U.S. Application Data**."  The following information is then provided:

> (63)   Continuation of application No. 12/254,540, filed on **Oct. 20, 2008**, now Pat. No. 8,078,544, which is a continuation of application No. 10/406,151, filed on **Apr. 2, 2003**, now Pat. No. 7,562,053.

**United States District Court**
For the Northern District of California

2

> (60) Provisional application No. 60/369,578, filed on **Apr. 2, 2002**, provisional application No. 60/402,929, filed on **Aug. 14, 2002**, provisional application No. 60/427,172, filed on **Nov. 18, 2002**.

'393 patent (emphasis added).

Based on the above-identified applications (copies of which are attached to the Gilliland declaration in support of OA's opposition), OA could have claimed various priority dates – potentially, up to five (in the alternative, of course).

After this case was transferred to this Court (from the Western District of Texas), Adobe informed the Court (through a joint CMC statement filed in December 2015) that it intended to file an early summary adjudication motion on the priority date of the '393 patent. *See* Docket No. 130 (St. at 5-6). The Court stated that it would allow the early motion. *See* Docket No. 134 (order).

Subsequently, on January 4, 2016, in compliance with this District's Patent Local Rules, OA served on Adobe its patent infringement contentions. *See* Wolff Decl., Ex. 2 (infringement contentions). One of the statements in the infringement contentions addressed the issue of priority date, as required by Patent Local Rule 3-1(f). *See* Pat. L.R. 3-1(f) (providing that "the 'Disclosure of Asserted Claims and Infringement Contentions' shall contain the following information: . . . . For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled"). OA's statement reads as follows:

> The application that resulted in the '393 Patent is U.S. Patent Application Serial No. 13/287,014, filed November 1, 2011 now issued U.S. Patent No. 8,271,393. All claimed subject matter in the '393 Patent has an effective filing date **no later** than April 2, 2002.

Wolff Decl., Ex. 2 (infringement contentions) (emphasis added).

Three days later, Adobe filed its early summary adjudication motion regarding the priority date.

## II. DISCUSSION

The date of invention for a patent is "presumed to be the filing date of the application until an earlier date is proved." *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443,

3

1  449 (Fed. Cir. 1986); *see also In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011) (same).

2  Here, the '393 patent has an application filing date of November 2, 2011. Adobe contends that the
3  Court should find that November 2, 2011, is the date of invention for the '393 patent.

4  As indicated above, OA wants an earlier date of invention – *i.e.*, it wants to claim a date of
5  invention based on a prior application. OA's Rule 3-1(f) disclosure identifies the priority date as
6  follows: "**no later** than April 2, 2002." Wolff Decl., Ex. 2 (infringement contentions) (emphasis
7  added). Adobe seizes on the fact that OA used the phrase "no later" in the above statement.
8  According to Adobe, because OA used that particular phrase, OA was (1) disavowing any priority
9  date **after** April 2, 2002 and (2) committing itself to a priority claim based on **'578 application**,
10  which was filed on April 2, 2002. In other words, Adobe contends that OA made the conscious
11  decision not to implicate priority based on the four remaining patent applications identified on the
12  face of the '393 patent (*i.e.*, the '540 application, filed on October 20, 2008; the '151 application,
13  filed on April 2, 2003; the '929 application, filed on August 14, 2002; and the '172 application,
14  filed on November 18, 2002).

15  Adobe then argues that, looking solely at the '578 provisional application, it is clear that
16  not all of the elements of the invention claimed in the '393 patent are found in that application.
17  Notably, OA does not really dispute that the '578 application does not disclose all of the elements
18  of the invention claimed in the '393 patent. *See, e.g.*, Opp'n at 9-11 (arguing that only one out of
19  five identified elements can be found in the '578 provisional application). OA argues, however,
20  that all of the elements can be found in three other applications (*i.e.*, the '172, '151, and '540
21  applications) and that Adobe was fairly on notice of priority based on these applications as they
22  were identified on the face of the '393 patent.

23  Given the above circumstances, the basic dispute for the Court to resolve is twofold: (1)
24  did OA's infringement contentions fairly put Adobe on notice of the '172, '151, and '540
25  applications; and (2) if not, then should OA be allowed to amend its infringement contentions?

26  As to the first issue, the Court finds that OA's infringement contentions did not fairly put
27  Adobe on notice of the '172, '151, and '540 applications. The main purpose of the discovery-
28  related Patent Local Rules is to get the parties to commit to positions early on in the litigation and

4

stick to them absent good cause.  *See Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLJ (HRL), 2016 U.S. Dist. LEXIS 20591, at *3 (N.D. Cal. Feb. 19, 2016) ("This district's Patent Local Rules require parties to promptly disclose their infringement . . . contentions and to adhere to those contentions unless good cause arises to justify amendment.  This district adopted these rules to prevent vexatious 'shifting sands' claim-construction strategies . . . ."); *Quantum Corp. v. Crossroads Sys.*, No. C 14-04293 WHA, 2015 U.S. Dist. LEXIS 131769, at *6 (N.D. Cal. Sept. 29, 2015) ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'  The purpose of increased scrutiny for amending infringement contentions, in contrast to a liberal policy for amending pleadings, is to prevent the shifting sands approach to claim construction.") (internal quotation marks omitted); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (noting that the Patent Local Rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction") (internal quotation marks omitted).  So even though Adobe knew from the face of the '393 patent that, in theory, OA *could* have claimed priority based on various applications, Adobe did not know with any certainty what position OA *would* ultimately take until it served its infringement contentions.  In its infringement contentions, OA made clear that it did *not* claim priority based on the '172, '151, and '540 applications – even though it could have – and instead asserted a priority date of "**no later** than April 2, 2002," Wolff Decl., Ex. 2 (infringement contentions) (emphasis added), which meant that OA was resting priority solely on the '578 application.[1]  Notably, OA has not given any excuse as to why it did not identify the '172, '151, and '540 applications (not even in the alternative) in its infringement contentions.  Nor does it explain why Adobe could not reasonably have believed that OA's

---

[1] Adobe points out in its reply brief that even the use of the phrase "no later" is problematic because Patent Local Rule 3-1(f) "requires a patent holder to assert a specific date of conception, not a date range."  *Harvatek Corp. v. Cree, Inc.*, No. C 14095353, 2015 U.S. Dist. LEXIS 93388, at *5 (N.D. Cal. July 17, 2015).  In *Harvatek*, Judge Alsup effectively endorsed the approach that the phrase "no later" should be stricken from the infringement contentions.  *See id.*; *see also Blue Spike, LLC v. Adobe Sys.*, No. 14-cv-01647-YGR (JSC), 2015 U.S. Dist. LEXIS 8778, at *24 (N.D. Cal. Jan. 26, 2015) (taking that approach).

5

1  statement was purposeful.[2]

2  The issue thus now turns whether OA should be permitted to amend its infringement
3  contentions to include a priority claim based on the '172, '151, and '540 applications.  Adobe
4  makes much of the fact that OA has not formally moved to amend but that argument essentially
5  elevates form over substance and it makes sense to address that issue now.  *See also* Opp'n at 15
6  (stating that, "[i]f it is necessary to amend [the] Local Patent Rule 3-1(f) filing, [OA] requests the
7  permission to amend its filing").

8  Patent Local Rule 3-6 governs amendment to infringement contentions.  It provides as
9  follows:

> Amendment of the Infringement Contentions or the Invalidity
> Contentions may be made only by order of the Court upon a timely
> showing of good cause.  Non-exhaustive examples of circumstances
> that may, absent undue prejudice to the non-moving party, support a
> finding of good cause include:
>
> (a)   A claim construction by the Court different from that
>       proposed by the party seeking amendment;
> (b)   Recent discovery of material, prior art despite earlier diligent
>       search; and
> (c)   Recent discovery of nonpublic information about the
>       Accused Instrumentality which was not discovered, despite
>       diligent efforts, before the service of the Infringement
>       Contentions.
>
> The duty to supplement discovery responses does not excuse the
> need to obtain leave of court to amend contentions.

20  Pat. L.R. 3-6.  "[G]ood cause under the local rules is subject to a two-part inquiry, which considers
21  whether: (i) the moving party has shown diligence in amending its contentions,[3] and (ii) the non-
22  moving party will not suffer undue prejudice."  *Quantum*, 2015 U.S. Dist. LEXIS 131769, at *6.
23  If the party moving to amend was not diligent, the court "is not required to consider the question

---

[2] As Adobe noted at the hearing, OA had a strategic reason to disavow reliance on the later patent applications in claiming an alternative priority date; by limiting its reliance on the '578, it narrowed its vulnerability to claims of prior art.

[3] "'[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered.'"  *Monolithic Power Sys. v. Silergy Corp.*, No. 14-cv-01745-VC (KAW), 2015 U.S. Dist. LEXIS 123825, at *6 (N.D. Cal. Sept. 15, 2015).

1  of prejudice to the non-moving party, although the court in its discretion may elect to do so."
2  *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 U.S. Dist. LEXIS 137845, at
3  *14 (N.D. Cal. Sept. 25, 2013).

4  Here, this case is easily resolved based on the diligence factor. More specifically, OA has
5  entirely failed to show diligence because it had all the information at its disposal at the outset of
6  this litigation but failed to include the information in its infringement contentions. *See Delphix*
7  *Corp. v. Actifio, Inc.*, No. 13-CV-04613 BLJ (HRL), 2015 U.S. Dist. LEXIS 131821, at *4-5
8  (N.D. Cal. Sept. 29, 2015) ("'In considering the party's diligence, the critical question is whether
9  the party could have discovered the new information earlier had it acted with the requisite
10 diligence.'").

11 At the hearing, the Court noted that the only possible argument OA might make (although
12 it did not expressly make such an argument in its papers) is that it made a mistake. The problem,
13 however, for OA is that it never offered any evidence (such as a declaration from the attorney who
14 prepared the Rule 3-1(f) disclosure) that the omission of the '172, '151, and '540 applications, or
15 the use of the phrase "no later," was a mistake. Indeed, as noted above, OA failed to give any
16 excuse for its failure to identify the '172, '151, and '540 applications (not even in the alternative)
17 in its infringement contentions.

18 Furthermore, even if OA had claimed mistake, the Court finds that position untenable.
19 Notably, during claim construction before the Texas court, Adobe expressly argued that each
20 claim should reference a skilled artisan's understanding as of November 1, 2011 (*i.e.*, the '393
21 patent application's filing date) because the '393 patent "includes ***nearly two full columns of new***
22 ***matter*** . . . added over the specifications of the priority documents." Docket No. 76 (Def.'s Claim
23 Constr. Br. at 2) (emphasis in original). In other words, Adobe was specifically calling out the
24 date of an invention as a problem as early in the proceedings as claim construction. Given that
25 fact, OA was clearly on notice that the issue of priority date was a significant one; thus, it was
26 unlikely that OA would subsequently make a mistake in its Rule 3-1(f) disclosure. This is not a
27 case where an amendment was permitted because the movant had made an obvious mistake. *See*
28 *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK 2012 U.S. Dist. LEXIS 163739, at *24

1  (N.D. Cal. Nov. 15, 2012) (finding an honest mistake where there was simply an "administrative
2  mistake" – "[t]he missing claim charts are listed in [the plaintiff's] Claims Summary Table (the
3  table of contents of [the original infringement] contentions, and duplicates of other charts were
4  served in place of the second set of omitted charts"); *OpenDNS, Inc. v. Select Notifications Media,*
5  *LLC*, No. C11-05101 EJD (HRL), 2013 U.S. Dist. LEXIS 77785, at *-44 (N.D. Cal. June 3, 2013)
6  (noting that the patent holder served its infringement contentions which included – both parties
7  agreed – "an obvious mistake"; more specifically, the patent holder included, as part of its
8  contentions, "screen shots for [a] Limitation that supposedly illustrate a non-HTTP request" but
9  the screen shots "actually show an HTTP request [*i.e.*, while] [t]he text of the [contentions] was
10 correct, the screenshots were wrong").

11 To the extent OA argues that it should be permitted to amend (*i.e.*, even in the absence of
12 any diligence) because there would be no prejudice to Adobe, as noted above, prejudice is not
13 required to consider prejudice where the diligence prong has not been satisfied. *See Symantec*,
14 2013 U.S. Dist. LEXIS 137845, at *14; *see also O2*, 467 F.3d at 1368 (stating that, because "the
15 district court could properly conclude that O2 Micro did not act diligently in moving to amend its
16 infringement contentions, we see no need to consider the question of prejudice to MPS").

17 Finally, even if the Court were inclined to consider prejudice, it would also have to
18 consider whether OA's proposed amendment would be futile. According to Adobe, there is
19 futility because "numerous claim elements now recited in the asserted claims [of the '393 patent]
20 are not found anywhere in the priority documents[4] and were added as new matter in 2011 [with
21 the filing of the '393 patent application]." Reply at 9; *see also Anascape, Ltd. v. Nintendo of Am.,*
22 *Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) ("To obtain the benefit of the filing date of a parent
23 application, the claims of the later-filed application must be supported by the written description in
24 the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor
25 invented the claimed invention as of the filing date sought.'"). Adobe emphasizes that "the '393

---

[4] As noted above, the key priority documents are the '172, '151, and '540 applications. The '151 application is now the '053 patent. *See* Docket No. 76-3 ('053 patent). OA's brief indicates that the '151 and '540 applications are essentially the same. *See* Opp'n at 6 (stating that the '540 application "largely duplicates the '151 utility application").

1  patent includes approximately two full columns of new matter that was first added to the patent in
2  2011." Reply at 7 (referring to '393 patent, col. 2:34-4:19). The claim elements that Adobe
3  asserts are not found in the priority documents are:
4  (1)   The limitation that "the identity validation of the first party indicates that the first party has
5        agreed to the one or more electronic documents";
6  (2)   The limitation that "whenever an acceptance of any or the one or more electronic
7        documents is received by the server computer from the client communications device of
8        the second party, attaching the identity validation from the first party and the second party
9        to the accepted one or more electronic documents"; and
10 (3)   The limitation that all or part of the electronic documents "are locked against future
11       changes."
12 (These limitations can be found in all of the independent claims, including claim 1.)

Adobe's contentions have merit. As to the first two limitations above, the asserted priority documents only disclose attaching an electronic signature specifically, and not (more broadly) an identity validation. As Adobe points out, electronic signature and identity are not equivalents. This is implicitly acknowledged in the '393 patent itself, which indicates that an electronic signature is *one kind* of identity validation. *See* '393 patent, claim 2 ("The method as recited in claim **1**, wherein the identity validation comprises an electronic signature."). The Texas court also construed identity validation and electronic signature in two different ways. *See* Docket No. 84 (Order at 32) (defining "identity validation" as "information that affirmatively identifies a party's identity" and "electronic signature" as "an electronic sound, symbol, or process executed or adopted by a party with intent to sign an electronic document"). Finally, a distinction between the two is articulated in at least one of the priority documents. *See* Gilliland Decl., Ex. 4, at 7-8 ('151 application) (mentioning identity validation in the context of registration information and contact information, but later discussing an electronic signature as indicating agreement to the electronic document). Notably, the Federal Circuit has emphasized that,

> [w]hile a prior application need not contain precisely the same
> words as are found in the asserted claims, the prior application must

9

> indicate to a person skilled in the art that the inventor was "in possession" of the invention as later claims. "Entitlement to a filing date does not extend to subject matter which is not disclosed, *but would be obvious* over what is expressly disclosed." . . .

*Power Oasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306-07 (Fed. Cir. 2008) (emphasis added). *See, e.g.*, *Anascape*, 601 F.3d at 1340 (indicating that, although inventor could have described the invention more broadly in the original application, inventor did not, and thus "the only reasonable reading of [that application] is that it is directed to and describes only a controller having a *single* input member operable in six degrees of freedom" while the later-filed application was "enlarged to cover *more* than single input members [*i.e.*, multiple input members]") (emphasis added).

Adobe's futility argument as to the third limitation above also has merit. OA asserts that the limitation that all or part of the electronic documents "are locked against future changes" can, in fact, be found in the '172, '151, and '540 applications because:

> The '172 provisional Application discloses in the attached figure that "[o]nce agreement is made, the system locks the negotiations from occurring." Ex. 3 at 3. The '151 utility Application discloses that the system will "[l]ock all or part of the Electronic Document(s)" in Fig 2, again with a similar disclosure in the '540 utility Application. Ex. 4 and 5 at Fig. 2 [("Lock all or part of the Electronic Document(s) Against Future Changes as they are Agreed to by the Parties")].

Opp'n at 10. But Adobe fairly points out that the priority documents do not recite that "the electronic document . . . is **already locked against future changes when it is received** (*i.e.*, it is received in a locked form and not merely locked after being received)." Reply at 12 (emphasis in original). Adobe emphasizes that the Texas court, as part of claim construction, "resolved the temporal issue of when the document must be locked." Reply at 13. More specifically, the Texas court stated:

> 1. A method for facilitating a transaction between two or more parties comprising the steps of:
>
> *receiving one or more electronic documents* and an identity validation at a server computer via a network from . . . a first party to the transaction

> *wherein . . . (b) all of the one or more electronic documents are locked against future changes*, and (c) the identity validation of the first party indicates that the first party has agreed to the one or more electronic documents
>
> . . . .
>
> [The 'wherein'] clause [of claim 1] limits the scope of the receiving step of the claim to a situation wherein certain conditions are actually met. One of the three conditions of the where clause in Claim 1 is that the electronic document be locked at the time it is received.

Docket No. 84 (Order at 18) (emphasis in original).

Similar to above, Adobe's position has merit, especially given the *Power Oasis* case cited above. In *Power Oasis*, the Federal Circuit concluded that the patent holder was not entitled to the priority date because "[t]he Original Application described a vending machine with a 'display' or 'user interface' as part of the vending machine, rather than a vending machine with a 'customer interface' located on a customer's electronic device." *Power Oasis*, 522 F.3d at 1307. "While the Original Application discloses multiple embodiments of the 'user interface,' all such embodiments make the user interface part of the unitary vending machine apparatus. There is simply no disclosure in the Original Application of a user interface that is either located on a customer's laptop or even separate from the vending machine itself." *Id.* at 1309.

*In re Huston*, 308 F.3d 1267 (Fed. Cir. 2002), also lends support to Adobe's position. In *Huston*, the Federal Circuit held that the original application "did not disclose the location-specific transmission of advertising messages to a golfer using GPS." *Id.* at 1276. The court rejected the patent holder's contention that there was disclosure because the original application referred to the transmission of "other information." The original application

> does not in fact disclose the transmission of generic "other information" to a golfer *based on the golfer's position as determined by GPS*. Thus, even if advertising could be viewed as a subset of "other information," the transmission of "other information" based on position as determined by GPS was not disclosed, and in particular the transmission of positional advertising was not disclosed. "Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed. It extends only to that which is disclosed."

*Id.* at 1277 (emphasis added).

Because, here, OA has not shown that the priority documents recite that the electronic document is already locked against future changes *when it is received*, one skilled in the art could not clearly conclude that the inventor invented the claimed invention based on the asserted priority documents.

### III.   CONCLUSION

For the foregoing reasons, the Court rules as follows.

(1)   Adobe's motion for summary adjudication is granted.  The date of invention for the '393 patent is November 2, 2011 (*i.e.*, the filing date of the application for the '393 patent), not April 2, 2002.  Because OA's own representations establish that the accused EchoSign technology was in use prior to November 1, 2011, the '393 patent is invalid.

(2)   OA's request to amend its infringement contentions to assert a new priority date (*i.e.*, a priority date later than April 2, 2002) is denied.  OA has failed to establish good cause for any amendment.  OA has not shown the requisite diligence.  Moreover, OA's proposed amendment would be futile.

A Case Management Conference is scheduled for April 22, 2016 at 1:00 p.m.  A Joint CMC Statement shall be filed by April 18, 2016.

This order disposes of Docket No. 138.

**IT IS SO ORDERED**.

Dated: April 14, 2016

_____
EDWARD M. CHEN
United States District Judge