```
                                              Pages 1 - 21

                 UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

COLLABORATIVE AGREEMENTS, LLC,  )
                                )
          Plaintiff,            )
                                )
  VS.                           )      NO. CV 15-03853-EMC
                                )
ADOBE SYSTEMS, INCORPORATED,    )
ET AL.,                         )
                                )
          Defendants.           )
                                )
```

San Francisco, California
Thursday, December 10, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

NIX, PATTERSON & ROACH
5215 N. O'Connor Boulevard
Suite 1900
Irving, TX  75039
BY:  **EDWARD K. CHIN, ESQUIRE**

For Defendants:

FISH & RICHARDSON
12390 El Camino Real
San Diego, CA  92130
BY:  **JASON W. WOLFF, ESQUIRE**

Reported By:        Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                    Official Reporter

<u>Thursday - December 10, 2015</u>                              <u>9:37 a.m.</u>

P R O C E E D I N G S

---000---

THE CLERK:  Calling CV 15-3853, Collaborative Agreements, LLC vs. Adobe Systems, Incorporated, et al.

Counsel, please come to the podium and state your name for the record.

MR. CHIN:  Good morning, Your Honor.  Edward Chin on behalf of plaintiff, Collaborative Agreements.

THE COURT:  All right.  Thank you, Mr. Chin.

MR. WOLFF:  Good morning, Jason Wolff on behalf of Adobe.

THE COURT:  Good morning, Mr. Wolff.

I have a stipulation and order regarding ESI discovery, and I'm going to go ahead and sign that, take care of that matter.

I am also, as we are speaking, filing an order denying the motion to reconsider the dismissal order so you will receive that shortly.

And so the question is where do we go from here at this point?  And there's talk about an early summary adjudication motion which there's a question of whether or not that needs to be informed by discovery, additional discovery, and whether that may well be somewhat fact-dependent.  I will just hear brief comments about that.

MR. CHIN:  Your Honor, we believe that summary adjudication, certainly in the next month or so, for example, would be inappropriate because we haven't had fact discovery being conducted in light of the transfer.

There was only a limited period of time in which the Western District of Texas, which previously had this case, had opened up fact discovery.  It was only a matter of six weeks, or so, and there are, you know, various issues tied into the issues for which defendant Adobe wants to move for summary adjudication.

THE COURT:  So what's an example of the kind of discovery that you would want relative to the issue of priority?

MR. CHIN:  Well, for example, one, they may want some discovery of our folks, so that's a distinct possibility, and certainly we have to get with our experts to discuss their views on the state of the technology in the relevant time period because that may be something that gets submitted with respect to those papers.

And also with respect to fact discovery of defendants, we may also want to ask them questions about their knowledge in or around that time as a potential rebuttal for some of the arguments that their lawyers will make in the pleadings.

THE COURT:  Do you disagree that there needs to be some discovery?

**MR. WOLFF:**  Yes, Your Honor.  Adobe disagrees.

This is entirely dependent on the intrinsic record.  There is a priority application.  The '053 Patent that was entered as an exhibit, Docket 76-3, is the priority application that goes back to 2002.

In 2011, the patent that yielded the '393 Patent was filed, and there were over two columns of specification added to that patent.

Critically, one of the elements in the claims -- there's just no disclosure of it in the 2002 record, so literally it's a matter of comparing the claims in the '393 Patent asserted against Adobe to the disclosure in the '053 priority application.

There's no discovery of anybody needed; it's just is it there or is it not there.  And we think that this can easily be resolved on summary judgment, and if it is resolved in Adobe's favor, that means their priority date is 2011, and the EchoSign technology that they've alleged infringed started in 2005.  They're not going to continue to pursue this case.

**THE COURT:**  That would be the end of the case?

**MR. WOLFF:**  That's correct.

**THE COURT:**  So why not hear this?  I normally do not allow multiple motions, but if there's a potentially dispositive motion and if counsel says it is really based on intrinsic evidence, why not go forward?

**MR. CHIN:**  Your Honor, I believe it takes more than just intrinsic evidence.  What the state of the art -- whether that new text is actually new material or not is a question of fact, and you can have experts, you can have testimony that we obtained from their witnesses, their fact witnesses, that might very much contradict what they might say in the papers.

**THE COURT:**  So the question of what is new material is a subtle one that is informed by state of the knowledge of the art that the time?

**MR. CHIN:**  That's a very relevant consideration.  Is it, in fact, new?  You're talking about words.  You can't assume that just because they're new words, it's necessarily new matter, in subject matter.

**THE COURT:**  So what is allegedly new here?

**MR. WOLFF:**  Your Honor, it's the identity validation term, and critically, I think, if I could draw a distinction between two terms that have been construed in the patent, that is, an electronic signature and an identity validation, and if we look at the specification -- if we look at the claims now in the '393 Patent, they repeatedly refer to something that happens or is operated on with an identity validation.

This term is mentioned once in the priority application, and it says part of some registration information can be an identity validation.  It doesn't say what that is or how it relates to anything else.

Now, the claims say you must attach an identity validation to the agreed document.  There is no disclosure of attaching an identity validation to an agreed document in the priority application.  None.  The identity validation is something you use as part of your registration information.

So what happened in 2011, they removed or they changed the specification so instead of attaching an electronic signature to a document, you attach an identity validation to a document, and there's relationship now between an identity validation and electronic signature that is just not disclosed nor is the step of attaching this construed term to the document.

So counsel says that you might need some discovery for someone to figure out what these things meant at the time. Well, the Court's already construed these two terms.  And it's right in the spec.  Like I said, there's one disclosure of identity validation in the priority application, which is a total of four lines of description in the priority application at Column 5, Lines 37 through 41.  That's it.

And what the priority application says about attaching is all with respect to an electronic signature.  It doesn't say anything about attaching an identity validation or a relationship between the identity validation and the electronic signature.

THE COURT:  So, in your view, nothing that your opponent can proffer and submit by way of expert affidavits or

whatever would change that analysis?

MR. WOLFF:  Correct.  There's a claim construction here.  We live and die by the claim construction.

MR. CHIN:  Your Honor, when this was before Judge Akin in the Western District of Texas, they basically argued for His Honor to decide that issue, and he said effectively, *I'm going to let fact discovery occur on that issue.  I'm not going to deal with it now.*  Granted, Your Honor --

THE COURT:  So if I were to ask you to define exactly what discovery you need in anticipation of such a motion, what would it be?

MR. CHIN:  Well, we expect to take depositions of their fact witnesses, people who work for Adobe and who have knowledge of the accused instrumentality and who would have knowledge about that subject matter, and just as -- in the course of ordinary discovery, asking about all kinds of issues. And one of the issues we would ask about would be this issue --

THE COURT:  I'm asking you not generally what discovery.  If I were to say -- for instance, if I were to stage discovery and give you the benefit of the doubt and say, although I am a bit skeptical about whether discovery is really needed and relevant, but in the interests of not going through a 56(d) type situation, say now if we're going to phase discovery and focus on this one issue for summary adjudication, what would that discovery -- what necessary discovery would you

have to do?  Forget damage, forget all the other stuff.  Just on this.

MR. CHIN:  Just on this?  Identify the particular people at Adobe who we believe would have had knowledge about that subject matter in around that 2011 time period and get their opinions about their knowledge of the state of the technology and --

THE COURT:  How would that be relevant?

MR. CHIN:  To the extent that they're going to -- in their papers, I expect their summary judgment is going to address what the state of the technology was and whether --

THE COURT:  In 2011?

MR. CHIN:  Yes.  And whether that would be considered new, and just generally what would be known to a person of ordinary skill in the art.  We think that would be relevant.  Might it be consistent --

THE COURT:  Isn't the key what was disclosed in the earlier application?

MR. CHIN:  But what its meaning is to a person of ordinary skill in the art as compared to what was the new text in 2011.

Now, might those witnesses say things consistent with what their papers say?  Perhaps.  But perhaps not.  And if it's not, that's relevant to the Court's consideration --

THE COURT:  So what else, besides taking the

depositions of knowledgeable people at Adobe, about the state of technology in 2011?

MR. CHIN:  To the extent that their papers may have declarations from their experts, I would expect that we would take --

THE COURT:  Let me ask.  You say it's based on intrinsic records.  Will you need any expert declarations?

MR. WOLFF:  No, Your Honor.

THE COURT:  That takes care of that.

MR. WOLFF:  There is a procedure under Rule 56 for summary adjudication to take discovery under these things.

MR. CHIN:  We might have a declaration in support of our response, so, you know, I expect perhaps they might want to take our expert's deposition, if that ends up being the case.

THE COURT:  Well, then maybe we should do this -- maybe we should simply do this in terms of a slightly elongated -- if we go down this route, we anticipate that there will be some focused discovery.  It may be irrelevant in the end.  But we allow for some focused discovery.

Maybe the way to do this is to have an elongated briefing so that you file your brief, and if, indeed, you don't have any -- see any need for an expert declaration, consistent with what you say, it would be pretty straightforward, and then you can debate what you need, and if you need something instead of the normal 14-day period, we would make this a 30-day, you

know, or even 42-day opposition time.  And then in case they come up with something and you need something, give you 21 days or something.  I mean -- and then we deal with this issue.

MR. WOLFF:  Your Honor, that's fine with Adobe.  We are tickled that you will entertain it because we do think it would be dispositive of the case and save the Court and the parties a lot of wasted effort.

MR. CHIN:  Your Honor, our preference is just to proceed with discovery, as one would do in a standard case, if you will, in terms of not being phased because once we -- let's say we take a deposition of one of their fact witnesses, we're already there, we have already paid the travel money and everything to show up --

THE COURT:  What additional discovery would you need? Let's say they lose the motion, and now it's game on.  Prepare for trial.  What additional discovery, other than what we've just talked about?

MR. CHIN:  Oh, as outlined in our case management statement, we have a -- you know, we've got witnesses dating back to -- on the Adobe side, going back to who worked there in or around that time period.  We're going to ask them how did the accused instrumentality work, who designed it, who developed it, did they have knowledge of the patents in suit or any of the patent applications related thereto.

THE COURT:  That's your traditional infringement, etc.

So, you know, in my view, if Phase 1 discovery is a small and discrete subset of the overall discovery, then it may make some sense if -- if -- there's a decent chance that this motion could resolve the case.

If, in fact, it would represent 80 percent of discovery anyway, then I see your point, *well, let's just do everything,* but it doesn't sound that way.  This is a fairly discrete, it sounds like at most a handful of depositions of people knowledgeable in the state of the art in 2011, if that's even relevant, compared to all the other things we're talking about, infringement, and I assume there would be damages, and everything else, analysis.  So it does make sense to phase this.

The disadvantage, besides having to go back and -- twice take a particular -- and you could stipulate -- I mean, if there are a couple of key witnesses that are going to be central of Phase 1 but it means keeping them there for an extra, you know, additional five hours or something so you can handle all -- you can stipulate to say well, in anticipation that this person might be deposed again, let's just -- since we're here, let's just -- I mean, you can do that on a case-by-case basis.

But generally the only other downside, besides having to make two trips, is the delay, which is why I don't like to do phase and multiple summary judgment motions -- is the possible

delay in getting this to trial should you not prevail on your motion, and we would have spent the next two months or so.

So the question is, is it worth it?

MR. CHIN:  Your Honor, another reason why we wouldn't want to have this kind of phase type of discovery is let's suppose they want to file their motion next week.  They haven't produced the relevant documents concerning the accused instrumentality that we would potentially use in the context of a focused deposition.  So we would be going in there really armed with questions but no documents, no e-mails from them, things that might really help us substantively in the context of that deposition.  That's why --

THE COURT:  Deposition, you mean on the merits, as opposed to the priority summary --

MR. CHIN:  To that issue.  For example, if we ask their witness certain questions relating to this priority they had an issue regarding stay of technology and they say X, we don't necessarily have any documents or e-mails that might be used as potential impeachment material or materials to refresh their memory, things that are typically used in a deposition.

THE COURT:  So what's been produced so far?  Anything?

MR. WOLFF:  Nothing, Your Honor.  If I might, can I respond to the discovery point?

THE COURT:  Yes.

MR. WOLFF:  So what -- I can imagine two attachments,

more likely one, to a summary judgment motion in this context, and that is -- and, frankly, it's already of record, and that's the '053 patent.  We already have the -- their patent was attached to the Complaint.

We're not saying we need any declarations, any witnesses, other than saying this is an authentic copy of whatever, but it's a government document.

I don't understand what Adobe's witnesses have to do with any of this.  If the issue is what they would have thought back at the time of the priority application, he has not articulated what that need is.  Why does Adobe's knowledge matter?  The EchoSign product did not exist until 2005.  So whatever happened in 2005 or 2011, he's talking about the state of the art, but his claim is that he's -- the state of the art is what happened in 2002, not 2005, not 2011.

So Adobe's product, the alleged infringing product, did not exist in 2002.  So I'm having a hard time understanding what possible result could -- how could it be used, because we're not offering opinions of our witnesses.  We're not going to offer an expert deposition.  This is -- or an expert declaration.  This is just look at the intrinsic record.  Does it disclose this limitation and this procedure or not?  There's no discovery needed for that.  There's no expert declaration.  It's just purely on the intrinsic record.

Now, counsel's point was well, there is this other

mechanism about production of Adobe documents and things like that that happened at the time.  Again, the accused products did not exist until 2005 so how is that going to help them establish something that happened in 2002.

But apart from that, Adobe is happy to pursue or to proceed with the production of documents and technical materials and source code and allow them to inspect that while we go through that process, and maybe we just -- there's not going to be depositions.  In reality, even if we proceeded with the existing schedule, there is not going to be any depositions for several months anyway until that production has been completed, until the 3-2 and 3-4 and then the regular discovery period happens.  There is nothing that can happen discovery-wise that is going to make a bit of difference with respect to deciding this issue.

**THE COURT:**  And that's the question:  What is needed, if anything more, than the actual intrinsic record to decide this question?  And maybe the thing to do is -- how quickly can you get your motion on file?

**MR. WOLFF:**  We could get a motion on file in 30 days.

**THE COURT:**  If you file in 30 days and I allow a -- let's say a 42-day period for opposition in case there's something that is needed in terms of discovery and then give you 21 days or something like that to respond, that puts us out about two months, so we can hear this thing sometime in

probably late -- well, sometime in March.

And I'm not going to otherwise stay discovery.  I mean, I'm not going to stay the case.  Things can proceed, but I'm giving you a shot to make this claim, and I'm giving the other side a chance to, rather than having to go 56(d) questions, you can anticipate that in advance to allow some discovery.

Again, it's not clear to me that what's been stated as needed is really needed, is really going to be relevant, but I'm not going to prejudge that because I haven't seen the papers.  But I'm building in some room for that.

And in that, what I will call Phase 1 discovery, if it is -- if it makes sense to take a merits-based deposition to convert a deposition or -- that's going to be taken into a full merits deposition for convenience sake and if the documents are there, etc., etc., you can certainly stipulate and have that done, but I'm not going to order that.

So it may be you will have to take multiple depositions, but -- and it sounds to me like the number of depositions needed here are going to be circumscribed, and it's not going to be a vast number, if any.

Let's set a date for your filing.

**MR. WOLFF:**  Your Honor, if I might, I could say how about we agree to file right around the -- whatever -- after the holidays or before the -- right after the New Year so we shorten our period to maybe 21 days, shorten their period to

respond to maybe 21 or 28 days, and we agree that maybe we could set up a telephone conference.  If there's some discovery that the plaintiff thinks they need after we've filed this motion, they can articulate what that is, and Your Honor could hear it over the phone, no briefing, anything like that.  Maybe we just agree to give it to them.

MR. CHIN:  Your Honor, we would like as --

MR. WOLFF:  What that motion would be, what that deposition --

THE COURT:  You are going to file on the 7th of January.  You are going to file six weeks thereafter, which is -- what is that date?

THE CLERK:  February 18th.

THE COURT:  February 18th.

Because what I don't want to do is spend time and then getting into a discovery dispute whether *Well, it's really relevant; no it's not; I really need this deposition.*

I'm just going to build in time because it means three more weeks than you would -- we are going to spend more time and resources arguing, but it does mean, obviously, the more quickly you can anticipate what they need, and if there are some documents, rather than getting into a dispute over that, it would be better just to facilitate that because it may be relevant in the long run anyway.

So the opening on the 7th.  Opposition --

THE CLERK:  February 18th.

THE COURT:  And then three weeks after that?

THE CLERK:  March 10th.

THE COURT:  And then two weeks after that?

THE CLERK:  March 24th at 1:30.

THE COURT:  Is our hearing date.

And meanwhile, I'm also going to set a trial date of December 5th.  And what that will do is give you until early June to complete discovery, nonexpert discovery.  I'll get out a full scheduling order in that regard.  But that gives you a heads-up in terms of -- if summary judgment is denied and this case goes on, you've got a couple months to get high gear and complete discovery.  And then we'll go from there.

In terms of the deposition, you all have your views about the deposition time that may be needed, and in view of this bifurcation, I'm going to go with plaintiff's proposed limits, should we get that far.  Should we not get past summary judgment, I'm going to go with the 70 and the 50 hours that's been proposed.

Now, the most -- let's see.  I will have to build in time with respect to *Daubert* motions and all that.  That will be incorporated into the case schedule, but it will be more compressed than -- I mean, it will be fairly compressed.

So ADR.  You have indicated --

MR. CHIN:  Your Honor, before we move on to ADR, may I

ask for clarification regarding discovery?

THE COURT:  Yes.

MR. CHIN:  During the motion for summary judgment briefing period relating to the priority date, you will allow depositions of -- just on those issues, or if we take a deposition, we can ask about whatever is --

THE COURT:  What I would like to do is have you focus on those depositions that are relevant to the impending MSJ or motion for summary adjudication, but as to those witnesses who are going to be deposed, because for convenience sake and practicalities, if you can agree to make that a full deposition, a merits deposition, I have no opposition to that.

MR. CHIN:  That would be our preference, provided we've been given the e-mails and the documents.

THE COURT:  Right.  Right.  I anticipate that that's a reasonably small subset of people, which is one reason why you should just take their full deposition at this point.

In terms of all the other stuff that is going to happen, that will be after we -- that will be in Phase 2.  I'm going to allow in this first phase, if you have got somebody in a deposition, rather than having them come back or you go back twice, if you can get documents together and make it a full and complete final deposition, let's just do it.  Okay?

ADR.  Sounds like you would prefer a magistrate judge settlement conference as opposed to one of the other modes; is

that right?

MR. WOLFF:  Correct.

MR. CHIN:  Yes.

THE COURT:  What about timing then?

MR. CHIN:  I would think, Your Honor, it needs to be at least probably 90 days out because we, I think -- they've already kind of indicated a lack of interest in resolving the case, and we think to move the ball along, if you will, it helps to have discovery under your belt to know which side is coming out kind of good and bad based on what's been uncovered during discovery, so you need some time for that to develop to have a meaningful mediation, regardless of who's leading it. Because, for example, if we did it this week, I don't think anything would change.  It wouldn't be productive.

MR. WOLFF:  Your Honor --

THE COURT:  Thoughts?

MR. WOLFF:  Well, we disagree that we wouldn't have any interest in resolving the case.  Of course we do.  We just know they won't do it on our terms.

But that said, I think 90 days or after this briefing is completed, doing something around that time, maybe that gives an opportunity for the mediator to look at that issue, possibly some other issues that are relevant to the case, and the parties can move on from there.

THE COURT:  Why don't I say settlement conference to

be completed by April 1st.  That way this -- and it could be done earlier.  Obviously you need to contact the magistrate judge assigned, whoever that is going to be, and that can be done earlier, but that certainly gives you more than 90 days to prepare and see if you can accomplish something through ADR.

So if that's agreeable, I'll go ahead and make the referral.

MR. WOLFF:  That's agreeable, Your Honor.

MR. CHIN:  That's agreeable to us.  I think that timing works out in light of the briefing period that we've got also.

THE COURT:  Good.

MR. CHIN:  And the hearing that would happen.

MR. WOLFF:  One thing, if -- it depends on who attends that.  I am on a vacation in Europe at that time, taking my kids there, from the 17th of March to the 31st of March.  I can definitely come straight back to San Francisco after that time.

If Your Honor cares if it's lead counsel or somebody else that shows up, I can have another person with authority, obviously, show up to that.

THE COURT:  That's -- we've set the hearing for March 24th.

MR. WOLFF:  That's correct.  I'm not worried about that hearing.  I have got people that can handle that.

MR. CHIN:  We'll tell you about it.

**THE COURT:**  We'll let you know what happens.

**MR. WOLFF:**  Decide it on the papers, Your Honor.

**THE COURT:**  You can work that out with the magistrate judge.  I think generally the notion is they want somebody there with authority and with knowledge of the case and that can handle it, and we can work around that schedule.

But the main thing to do is actually get on the schedule because they're pretty busy.

**MR. WOLFF:**  Right.

**THE COURT:**  So we'll also couple the hearing on the 24th of March with a status conference to see whether we need to cover anything else, but in the meantime, I will also get out a trial schedule in this matter.  All right?  Good.  All right.  Thank you.

(Proceedings adjourned at 10:06 a.m.)

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, September 27, 2016

*Pamela A. Batalo*

Pamela A. Batalo, CSR No. 3593, RMR, FCRR
U.S. Court Reporter