Pages 1 – 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

COLLABORATIVE AGREEMENTS, LLC,    )
                                  )
          Plaintiff,              )
                                  )
  VS.                             ) NO. C 15-3853 EMC
                                  )
ADOBE SYSTEMS, INC.,              )
                                  )  San Francisco, California
          Defendant.             )  Monday
                                  )  November 9, 2015
_____)  2:21 p.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          NIX PATTERSON & ROACH, LLP
                        5215 North O'Connor Boulevard
                        Suite 1900
                        Irving, Texas   75039
                    BY: CHRISTIAN J. HURT, ESQ.
                        and
                        HUDNELL LAW GROUP
                        800 West El Camino Real
                        Suite 180
                        Mountain View, California   94040
                    BY: LEWIS HUDNELL, ESQ.


For Defendant:          FISH & RICHARDSON, P.C.
                        500 Arguello Street
                        Suite 500
                        Redwood City, California   94063
                    BY: NEIL A. WARREN, ESQ.

Reported by:            BELLE BALL, CSR #8785, RDR, CRR
                        Official Reporter, U.S. District Court

**MONDAY, NOVEMBER 9, 2015**                                    **2:21 P.M.**

                           **P R O C E E D I N G S**

         **THE CLERK:**  C 15-3853, Collaborative Agreements versus Adobe.

    Counsel, please step forward to the podium and state your names for the Record.

         **MR. WARREN:**  Your Honor, good afternoon.  Neil Warren for Adobe.

         **THE COURT:**  All right, thank you.

         **MR. HURT:**  Good afternoon, Your Honor.  Christian Hurt here this morning on behalf of the Plaintiff.

    We have a slide deck that we put together.  I can either run it on my computer, or, if Your Honor prefers, just hand it to you.  Or we can just --

         **THE COURT:**  Why don't you hand it to me first, and I can tell you whether it would be useful or not.

         **MR. HUDNELL:**  Lewis Hudnell also for Plaintiff, Your Honor.

         **THE COURT:**  Thank you.

         **MR. WARREN:**  Your Honor, Defendants also put together a slide deck that is intended to give a little bit of background on the issue, on the patent and on the case, because, understandably, the Court is coming at this issue somewhat cold.

    (Document handed up to the Court)

**THE COURT:**  Well, cold, but I have Judge Yeakel's order.  And the issue here seems to me a very discrete issue at this point.  So --

(Document handed up to the Court)

**THE COURT:**  Let me start by asking some questions, and then you can tell me whether some portion of your slide presentation would be useful to me.

First of all, on the threshold question of whether reconsideration is warranted, it seems to me that it is, in light of the *Williamson* case, because Judge Yeakel did rely and cite the previous proposition about the absence of the word "means" gives rise to a, quote, "strong presumption," et cetera.

And we now know that after *Williamson* that, you know, you've got to delete the word "strong."  Just a normal presumption, not a super presumption.

And we know that the Court then looked at the question, at least presented to it, in terms of the terminology there about the module distribution, control module, et cetera, et cetera, or distribution learning control module.  And, finding that it essentially stated a means plus function claim.

And, so, but my question is the Plaintiff has relied now pretty heavily on the Linear Technology -- *Impala Linear* case, which of course predated much of this, and looked at the term "circuit" as one that is more on point and still good law

here.  And I will note two things about that case.

Number one, although it predated, obviously, by eleven years the *Williamson* case, the Court did not engage in a super or strong presumption.  At least, it didn't articulate it as such.  It just simply talked about the presumption.

And so it's not clear to me that it had engaged in the wrong legal standard that was subsequently reversed in the string of cases that were -- that did employ a strong presumption, that was reversed.

So it's not clear to me that Linear's overarching legal analysis and standard is inconsistent with what we now know is the Federal Circuit's analysis, and *Williamson*.

And the second observation, and just to kind of cut to the chase, it seems to me that what's critical in the final analysis is not just whether you use the word "module," "software," "circuit," "code," "segment," et cetera ,but also whether or not there is sufficient language that describes the operation and the relationship of that thing to -- to the rest of the invention so as to give it sufficient structure.  And it seems to me, like all things, there's kind of a continuum.

You know, as the Court said in *Williamson*, the learning -- the module there, the description of that was pretty general. I mean, other than high-level input/output, it really didn't describe much at all in terms of its operation.

In *Linear*, there was -- with respect to "circuit," there

was much more description in terms of what the first circuit

did, monitoring a signal from the output terminal to generate

a first feedback signal.  Then the second circuit generates

the first control signal during a first state of circuit

operation.  It continues to explain the cycling and all sort

of stuff.  Same with the third circuit.

Well, here, we've got something that's, to me, more

descriptive in terms of operation and relationships with other

components in terms of describing the code segment, for

instance, in Claim 25, more than -- more descriptive than

*Williamson*; arguably a bit less descriptive than in *Linear*.

I mean, that's how I see it.  I mean, it seems to me

that's the critical -- in determining whether this is going to

be governed by a means-plus-function analysis or not, it is a

question of degree.  Part of it is the term used, whether it's

something that is clearly accepted structure or not.

And if it is something that is somewhat amorphous, then

you look to the degree of specificity, as the claim describes

its operation.  I hate to use the word "function."  I guess

there's a difference between function and operation, which I

frankly still don't quite fully comprehend, but I'll say

"operation," and its relationship with the other elements or

components.

So that's how I see it.  I mean, we are kind of in between

these two, but you can tell me whether these slides are going

to be helpful or not.  But that is the key inquiry that I'm sensing right now.

**MR. WARREN:**  Absolutely, Your Honor.  I think Defendant's slide will be helpful.  And I would like to address that a little bit.

Especially on the *Linear* kind of circuit type of case, there is a critical difference between hardware and software.  And, when you're dealing with a circuit, if you look at the *Linear* case, in the definitions that they provide for "circuit," the definition provided is, and I quote (As read):

"The combination of a number of electrical devices and conductors that, when interconnected to form a conducting path, fulfill some desired function."

So what we have is a very limited scope of tangible physical things that we can interconnect for desired function.  And that is critically different than software.

And in the same way that *Williamson* is different, the code segment that's at issue in this case is different as well.

In software, there is no tangible thing that you are going to be interconnecting.  And what is created is an almost infinite number of possible ways that you could build the software.

And what's critical in the analysis under whether or not 112-6 is going to apply is:  Does a person of ordinary skill in the art, when they look at the claim, do they understand

the specific structure that is referred to in the claim?  Do they know how to build that thing?  And is there only a specific thing that is being built?

And when you are dealing with software, there simply isn't.  Especially for the types of complex functions that are recited in these claims.

THE COURT:  So does that suggest, then, any time a software or some component of software is claimed, that's almost by definition a means plus function -- and you don't have -- you know, the actual code, algorithm and everything, that that automatically puts you into a means-plus-function analysis and then to the *Aristocrat* world?

I mean, that's pretty -- I won't say revolutionary, but a pretty big pill there to say -- because given the nature of software, the infinite way things can be programmed, et cetera, et cetera, there is inherently a degree of lack of structure that almost automatically would get you into, absent specifications of algorithms or something very close to it, that gets you into the 112, Paragraph 6 world.

MR. WARREN:  I don't think that it's any type of a categorical rule.  It depends on how you are drafting your claims.  And the reality is that claims drafting and the way that prosecutors draft claims somewhat lags the case law.  So at the time these claims (Indicating) were drafted, the law was different.

So at the time these claims were drafted under the old *Williamson* regime, perhaps under the strong presumption, they would have been good enough.  Now, you can always include more structure in your claim.  Nothing --

**THE COURT:**  How do you include -- let's say software is --

**MR. WARREN:**  Sure.

**THE COURT:**  You want to stay out of means plus function now under *Williamson*; how would you -- you're the claims prosecutor.  How would you draft it -- other than spelling out, for instance, the precise algorithm for that software and the code language, is there a way to do it without going that far?

**MR. WARREN:**  Absolutely.  You know, what you can do is you can take the functions that you want to have implemented, and you can describe them in a way that's not a simple *Beauregard* claim.

What the prosecutor in this case did was he took a method claim that he wrote, and he copied and pasted it under a *In Re: Beauregard* preamble, and he copied and pasted a code segment before each of the method steps.

Frankly, Your Honor, that is lazy claims drafting, and --

**THE COURT:**  How would you have done this -- let's take a look at Claim 25.

**MR. WARREN:**  Absolutely.

**THE COURT:**  (As read)

"Code segment for receiving one or more electronic documents and an identity validation at the server computers."

So it tells you where it is.  It tells you what it does: It receives electronic documents and an identity validation. And it tells you it comes through a network from client communications from the first party.

So what would you, if you want to make this right -- now you're the drafter -- besides an algorithm, give me an example of what you would add to that.

**MR. WARREN:**  Well, I would begin with a more descriptive introduction.  So instead of saying "a code segment for," I would give the portion of the software a name. You know, I was a software engineer before I went to law school.  And so I would give it the type of module name.  I would say "a document receiving module" or you know, something other than "a module," but "a document receiving" you know, "portion of code."

**THE COURT:**  Yeah, okay.

**MR. WARREN:**  I don't consider "code segment" different from "module," so I might use those interchangeably.

**THE COURT:**  All right.

**MR. WARREN:**  But I would present some type of introductory structure.  So it's a document receiving portion

of code. And I would say that the document receiving portion of code, I'd say that it's running, you know, on a computer.

And I would -- other than that, for this specific claim element, given that it does give kind of the inputs and the outputs, as a canonical example, if there was some type of more structure put into the type of code segment, then I think that a software engineer could probably look at that and say: Okay, well, you know, how do I receive documents -- there's actually libraries and stuff that receive documents, you know, from uploads.

So I would say, you know, "receiving a document," and then there's lots of ways of doing that. So one of them could be through a get request or a post request. So you could take one of the examples from software, say internet software or different types of software, and I could include that in there. And I could write a bunch of different claims that have various different ways of receiving that document.

But I could give something tangible in my claim that would say: This is how I'm receiving the document.

THE COURT: What if you didn't want to limit the claim to one particular type of --

MR. WARREN: Well, if what you don't want to do is limit the claim to a particular type, and you want to claim it broadly, you know, you're sitting on the continuum of are you claiming too broadly, and are you in -- the whole purpose of

112, 6 is that you don't get to just define a function and get every single possible structure that achieves that function.

**THE COURT:**  Yeah.  But I'm looking at the obverse of that.  And that is:  How do you avoid that?

So you say give it a name, you say it's running on a computer, you say give examples of the kinds of requests received that it would process --

**MR. WARREN:**  Yes.

**THE COURT:**  And what else would you do?

**MR. WARREN:**  For this element, that's probably -- I think that would be sufficient.  If you gave a more meaningful introduction and you gave some -- something that a person of skill in the art in software design would understand as being a mechanism for receiving documents and identity-validation types of information, I think for this claim element, that would get you over the hump.

**THE COURT:**  How about the next time it's used?

(As read)

    "A code segment for receiving registration
    information at the server via the network from the
    second party's device, wherein the registration
    information comprises the identity validation of the
    second party."

How would you add to that to make it --

**MR. WARREN:**  I think it would be very similar.  I

think that, again, you're talking about -- you're talking about receiving information from, you know, a client communication device, which is a computer or a mobile phone, at a server.  On the continuum of complexity of software, those are not that high.

Perhaps if I could, Your Honor, direct you to some of the more complex claim elements.

THE COURT:  Okay.

MR. WARREN:  If you would look at Claim -- well, why don't we just look at -- sticking with Claim 25, we could look at the very last claim element.

THE COURT:  Okay.

MR. WARREN:  The last claim element is basically in the context of this electronic signature system, where -- and I'm just going to kind of paraphrase here.

You're receiving the second party's acceptance to the contract, and you're appending to the contract an electronic signature or an "identity validation," as they say.  Something that shows the contract has been accepted and signed by both sides.

THE COURT:  Uh-huh.

MR. WARREN:  So that's where we're at in the system. Now, at that stage, in terms of software, that's a very complex thing.  Especially because of the breadth.

This claim, you know, is no longer limited to electronic

signatures.  This claim has been broadened significantly through the use of the term "identity validation," which Plaintiff pushed for a very broad construction of.

Ultimately, the parties agreed on the construction for that term.  And it's extremely broad.  It's basically anything that affirmatively identifies who you are.  I mean, it could be a picture.  There's a lot of different ways that I can affirmatively identify who I am.

And the second piece of this claim that makes it very, very broad and untethered to any type of structure is the word "attaching."  Plaintiff has argued for an incredibly broad reading of the word "attaching."

So I'm attaching something that actually, I believe, they think could be a sound or a program or something.  And I'm attaching it to a document somehow, which they say can mean linking or associating.

So at this point, in terms of software, we're not talking about just sticking a signature on a PDF.  We could be talking about databases.  We could be talking about, you know, any type of document storage, any type of association of any type of information.

And so at this point in the claim, we really are at the point where there is nearly an infinite number of ways of implementing this claim.  And a person of skill in the art, a software engineer reading this, they don't know if you're

using a database. They don't know if you're just sticking a signature on a PDF, which is the original way that somebody would electronically sign a document.

You could be doing something incredibly complex. You could just be e-mailing it. Any type of attaching or associating.

You could be using metadata. That's another thing that Plaintiff has raised. You could be somehow associating with metadata with a document that is not even visible to the naked eye when you print it. There's just at this point a nearly infinite number of ways.

And a person of skill in the art has no idea what software structure --

**THE COURT:** At this point, the operation or the function of the code segment is referred to in this last element is so broad, that's where you, in your view, definitely lose the structure.

**MR. WARREN:** Absolutely. There's just -- the critical inquiry here is: Does a person of skill in the art know the specific structure that we are dealing with? Do they know --

**THE COURT:** Might draw a distinction to some of the earlier elements, where it's something a little more mechanical and a little more obvious. As -- as you -- as you demand that the code segment perform a broader operation

without greater specificity, that's where you run into indefiniteness.

MR. WARREN:  Well, I think, yes, you run into indefinite -- indefiniteness is more of an issue of:  Is there structure disclosed in the specification.

But you're certainly in 35, 112, Paragraph 6 land when you have a person of skill in the art who can't read the words of the claim and know how your software is implemented.

And if they don't know how to do your thing, you don't get to just claim a function and get every possible way of writing that software.  That's the whole point of the statute.

THE COURT:  Explain to me the conceptual difference and overlap with enablement.  I mean, what you just said in terms of -- when you're in, you know, 112 --

MR. WARREN:  Sure.

THE COURT:  What you just said, whether a person in the art can tell how software is implemented, that sounds also somewhat similar to enablement as well.

MR. WARREN:  Well, enablement looks at the specification and asks:  When you have the claim element and you look at the specification, does the specification enable a person of ordinary skill in the art to make use of the invention?  And so it's a very different inquiry.  Because then, we're going into the specification.

That's much more akin, actually, to something more along

the lines of the indefiniteness prong of this, when you're looking for an algorithm.

But enablement is very separate, because a person of ordinary skill in the art -- and the case law says this expressly when we are talking about the indefiniteness prong -- it's not good enough that a person of ordinary skill in the art simply could build the software.

The cases are express on that point.  And that is -- I don't have the case cite for you.  I know it's in the papers.

THE COURT:  Right.  I'm familiar with that.

MR. WARREN:  But, you know, the inquiry is much harsher here.  They have to be able to be specifically tied in the specification to the functions that they are claiming when you get to the indefiniteness prong.

But there's two separate kind of steps to this inquiry.  The first is whether or not you're construing under 112, 6.  And once you make that threshold decision, then we're kind of looking at the specification and saying:  Is there sufficient structural disclosure?

THE COURT:  Let me ask for the response before you all start showing me some slides, to this last point.  If you look at the last element, that it contains such sort of broad and complex operations that that is where -- the reference to code segment loses requisite structure, that that then puts you into the 112, 6 category.

**MR. HURT:** I disagree with that. I think if we take a step back, this is their burden of proof. And what Mr. Warren mentioned, there isn't any evidence in the record to back that up.

When I look at this claim, I think it's sufficiently clear to how to implement to one of ordinary skill in the art, and sufficiently narrow. It's essentially an if-then statement. If a piece of data is received, then another piece of data is attached.

There's nothing in the record to actually suggest any of what Mr. Warren just told Your Honor. They don't get an expert to say it; they didn't put any technical documents to say that. They didn't put any fact witnesses from Adobe or anyone else to say that. And it's ultimately their burden of proof.

And whether the *Williamson* case and the presumption against means-plus-function claiming is a strong presumption or just a presumption, they still have to come forward with the evidence.

Mr. Warren said maybe a dozen times -- actually, that's probably a little over, maybe he said it about three or four times -- that the critical inquiry is what one of ordinary skill in the art, a software engineer would understand that claim term to cover. And they didn't put in any evidence of that.

What is the level of skill in the art?  No evidence of that.  What would one of ordinary skill in the art understand is the breadth of this claim to be?  There's no evidence of that.

But the plain -- to me, reading it as a lawyer, the plain language seems to implicate an if-then statement of whenever an acceptance is received, whenever the system gets a piece of data, it attaches another piece of data.  I don't see how that is so broad and can be implemented so many different ways to render this a constructively means-plus-function claim.

I would note that --

THE COURT:  Tell me, what does attaching an identity validation means?  I've heard that it's been -- it means something very broad, and that's what opens the door.

MR. HURT:  Sure.  The District Court actually construed the term "attaching."  Let me find it and direct it to Your Honor.

THE COURT:  Let me know what page that's on, of the opinion -- the claim construction.

MR. HURT:  Sure.

(Off-the-Record discussion between counsel)

THE COURT:  Claim 1.

MR. WARREN:  There is a table at the very end of the order, Your Honor, if you want to just refer to that.

MR. HURT:  All right.  I had flagged the two terms.

**MR. WARREN:**  It's on Page 32.

**THE COURT:**  All right, 32 (As read):

"Attaching the identity validation.  Adding the identity validation into or appending the identity validation."

**MR. HURT:**  Right.  So when Mr. Warren references what we argued, the District Court actually construed this in a way that means "adding" or "into" or "appended," which to me seems fairly straightforward that it's -- the identity validation is added into the document or appended to the document, which is -- I don't believe is as broad as Mr. Warren suggested.

**THE COURT:**  Mr. Warren suggests there are many, many ways of doing this, and that sort of the more ways of doing it, the less structure there appears to be.  But what's your response to that?

**MR. HURT:**  There's no record on that.  I don't believe there are such a myriad of ways to do this such that it renders the term "code segments" so incredibly broad.

If they wanted to bring forward that evidence, they certainly could have.  It is ultimately their indefiniteness motion, and their burden of proof.

And there were a few different stages in this.  At the Markman hearing, they didn't bring forward any evidence, and they didn't put in any reconsideration motion.

As I read it, I don't see how it is that broad or so broad

that 112, 6 was implicated.  We cited in our papers, and it's in the slide deck, the District Court in the Eastern District of Texas, post-*Williamson*, considered the term "code," so, code for doing something.

And post-*Williamson*, the Court there concluded that "code," itself, connoted sufficient structure, and looks to expert declarations that the parties submitted that backed that up.

Here, we've got that Judge Yeakel found and the Defendants do not challenge that a code segment is likely to connote software structure.  Under the *Smartflash* case in East Texas, Judge Gilstrap found the exact same thing, which post-*Williamson* weighed towards finding that a code was sufficient structure.

And then in that case, the judge addressed the question your Honor asked about:  How much operations and how much heft and how much specificity need to be in there?

And in that case, the court concluded on top of a code, alone, being and indicating a sufficient structure, that the way the code was used in the claims also showed that it was sufficient structure.  And there, there were two limitations: "code responsive to data that receives other data," and "code that evaluates use -- use status data and use rules to determine whether access is permitted."

As I read that, that's a lot more broader than this

specific if-then statement.  "Code to evaluate use data."

So how do you -- you know, there are probably -- and Mr. Warren can probably respond this more.  How -- there are probably -- there are many ways that one can evaluate certain data, or a computer can evaluate data to make a determination about whether to permit access or not.

And the Court in the *Smartflash* case concluded that those two limitations in that particular operation was sufficient to avoid Section 112, 6, after *Williamson*.

The Defendant has never addressed that case.  And I think it strongly shows that the reconsideration of their motion should be denied.

**THE COURT:**  And if I were to deny the motion, since this is on a motion to dismiss -- well, not a motion to dismiss, but --

**MR. HURT:**  It's effectively a summary-judgment motion on a subset of the claims.

**THE COURT:**  All right.  Does that preclude -- would that preclude the Defendant from, whether it's at trial or some other juncture, of -- of submitting the evidence you say is missing now, to try and meet that burden of proof?

**MR. HURT:**  I think it depends how Your Honor makes the ruling.  If the Court concludes as a matter of law, as the *Smartflash* case did, that the claims are sufficient structure, I think that's the end of the inquiry.

If the Court denies it for lack of a full trial record, which the Court also could do, then I think we are in a different procedural posture.

Under my reading of the *Smartflash* case, it matches up. And the motion should be denied on the merits. And the Defendants had the opportunity to bring this evidence forward, and they didn't.

THE COURT: All right. What about the identity validation, which is the other point Mr. Warren pointed out? Again, that seems very broad. It's been construed to mean information that affirmatively identifies the parties' identity.

What's the range of options there? What is that --

MR. HURT: Sure. So the claim, itself, talks about, really, an if-then. And I would just note that we agreed to identity validation at the hearing, so -- it was disputed, and then we agreed to it. And the function of attaching the identity validation just means attaching a type of data.

That data -- you know, I don't think I was as experienced a software engineer as Mr. Warren, but I was a EE electrical engineer in a prior life. And any type of computer data is a series of zeroes and ones. And it doesn't matter if it signifies an image, text, sound, or something else.

And so the fact that this could refer to many different types of data, I don't see how that implicates the breadth of

the claim.  And there's -- there's really no evidence to suggest otherwise.

THE COURT:  All right.

Response, Mr. Warren?

MR. WARREN:  First, it is not an if-then.  The portion that was referred to was actually construed, also. It's at the very top of Page 33.  It's not:  If this happens, then this happens.  It's actually:  Whenever this happens. And the Court construed that to mean, in these claims, each time.

So essentially what we're talking about is something that has to have some type of an event handler.  And each time it happens, you have to attach the identity validation.  And what you're -- each time is each time you receive this acceptance.

So it's not if this happens, then that happens once, first of all.  And --

THE COURT:  How is that really different, though?  I mean, each time that happens, when that happens, maybe it goes to the frequency or the number of --

MR. WARREN:  Well, it has to do with how you would implement it in the software.  You know if, then else is a very understood software construct which I think Plaintiff is trying to rely on here.  You know, they're literal statements that you would make in software.  And software is structural, which means it's typically read from top to bottom when you're

dealing with an if-then-else.  So it's not something that is constantly being listened for, somehow.

I know if someone's not coming from the software realm, it may be difficult to conceptualize.  But it's not something that you're just constantly listening for, and if this happens, then that happens.  That's really not what Plaintiff's counsel is referring to when he says if-then-else. It's a one-time event.  If this happens, then this code -- if this condition is satisfied, this logical condition, this code is executed.

**THE COURT:**  That can't happen a multiple number of times?

**MR. WARREN:**  It can, but it requires far more -- it requires things in software called "event handlers," which basically are things that listen for various events.

So when you're using your computer, there's an event handler for your mouse, for example.  And it's listening for every time your mouse clicks, where is it getting clicked, and what's happening.

Now, once you're into that type of software realm, you're really in a very different type of event-driven software.  And we're not in the very simple if-then-else type of software that we're dealing with.

And this issue was argued to Judge Yeakel, you know, that the system that's being dealt with here -- this is why the

word "whenever" was argued.  The system has to do it each time.  That's what the claim says.

THE COURT:  So the more complicated the software program -- and requiring an event handler complicates things -- the more -- or the less structure exists, and the more you slide into 112, 6?

MR. WARREN:  What I would say is that the more complexity the area is, the more different ways of doing it there are.  And the more you're introducing kind of the engineer's kind of creativity into the system.

So it's no longer:  I'm reading a patent and a specification and I'm building the inventor's thing.  It's really, we're sliding much more into:  I'm reading the inventor's function, and I'm bringing my own creativity as an engineer to the structure.  And that is exactly what you are not allowed to do.

As a patent claimee with an apparatus claim, you have to define your structure.  And once you're into the realm of just defining a function and trying to get your claim to cover every possible way of implementing that function, and you have a function that does not have -- when a person of skill in the art reads it, they don't say:  I know what that is.  That's an if-then-else statement.  Bam, I'm done.

Once you don't have that, I think you are in 112, 6 land.

THE COURT:  Why doesn't everything you're telling me,

if I accept it at face value, suggest that on this record, there's just nothing in here?  I can't possibly rule whether or not the presumption and burden has been -- the reverse presumption and the burden's been met.

It may be different if there's actual evidence of exactly what you said.  Because I'm not a software engineer. Everything you are telling me you are teaching me now about event driven versus if-then, et cetera, I didn't see anything, certainly, in the reconsideration papers about that.

So why isn't the appropriate venue not the current motion, but trial?  Or, I don't know if there's going to be any subsequent motion work, but it seems to me that you're predicating your argument on the fact that as the operations get more complex, the more ways to do it, the more the -- you have to rely on the -- not on the function that's set forth, but the creativity of the engineer, et cetera, et cetera. Sounds logical, but there's nothing in here.

**MR. WARREN:**  Well, I would say actually that it's the opposite.  What we should be doing is we should be looking at the intrinsic evidence.  And we should be looking at the specification.

And, does the specification teach us which way to do it?

**THE COURT:**  Well, and that turns on, as you have just said, for instance, how many ways there are to do it.  And how complicated is it.

I think you admitted -- sort of conceded some of the earlier terms are a little more simple, it's not quite the range -- you'd like to do some stuff like add some enhancers. But it's where you get more complicated.

And, you know, the whole question of whenever, you know, as well as attaching, et cetera, now raises to me sort of factual questions. How, how complex is it, how deficient is the operational language here, relative to the range of possibilities?

That sure sounds like who's ever going to have to decide this is going to need some evidence.

**MR. WARREN:** Well, I don't think that this is a question of fact so much. I mean, the fact that, you know, you're looking at this -- and the specification -- you're right. There is a possibility -- there's a theoretical specification that could give some disclosure, but not enough.

But we're really in the realm here that there's no disclosure in the specification, except for the mere words of the claim. And so the specification isn't going to give any help.

And it's certainly not the case that there's always expert -- that you need expert opinion on this. And certainly, most cases decide the 112, 6 indefiniteness issue not as a question of fact, but more on the question of -- in terms of claim construction and claims drafting.

And so on that, I did want to respond to something counsel said about the *Smartflash* case.  He kept saying that that was a case where the term at issue was "code," and all they were dealing with was "code," and this case has the word "code" so they're the same.  And, and frankly that's just not true.

In the *Smartflash* case at Star 11, they're very express. Quote (As read):

"Here the terms at issue are not merely 'code' and 'processor.'  But, rather, include substantial additional language describing the operation of the components at issue and their interaction with other components."

And there's nothing -- the claim elements at issue there are very much more similar to the first two claim elements that we discussed earlier, and are very much dissimilar to the last claim element we discussed.

Now, on the flip side -- and I won't go through, you know, our slides, but if I could direct Your Honor into the binder that I handed up, what I have -- I just want to very briefly discuss Slide No. 8.

And what I put on Slide No. 8 -- because I think this is another reason why we can avoid, you know, needing to prolong this issue, needing to go into expert declarations.  We can decide this issue very much on a comparison fact-to-fact with the *Williamson* case.  Because the *Williamson* case dealt with a

very similar issue.

And when you read the element in *Williamson* that is on this slide, we're dealing with a claim element that is very much like the first two that we discussed.  You are dealing with "a distributed learning control module," which is actually -- I would say "module" and "code segment" are synonymous.  And it actually has the introductory language that I said, you know, we should add, that the claims here are lacking.

And then it goes on, and it has the word "receiving," which is like the first two elements that we discussed.  And it's receiving communications, and relaying them.

So --

**THE COURT:**  "...intended receiving computer system and coordinating the operation..."  That's where it gets -- you keep going down the claim, it gets broader and broader.

And it's -- when you get to the "coordinating," what does that mean?

**MR. WARREN:**  Well, is "coordinating" really that much different than the types of posting or receiving?  And especially once we get to "attaching," I would say, you know, once we're to especially the word "attaching," where Plaintiff is right that it means adding or appending.

Now --

**THE COURT:**  Seems a little more understandable and

concrete than just simply "relaying to an intended receiving system and coordinating the operation of the streaming data module."

**MR. WARREN:** Well, I'm -- I mean, I tend to disagree. I see this claim element as very much akin to the types of receiving and posting elements that are at issue in this case, and substantially, you know, less than the complexity -- and perhaps it's because I have the benefit of knowing Plaintiffs' infringement theory on the identity validation and attaching type elements.

But the word "appending and adding," again, we're talking about things like metacode. You know, if I add it to the metacode, I've added it to the document. If I digitize it, and synthesize it into the document somehow, I have added it. Appending, you know, can be when you're talking about an electronic appendant -- attachments, like an email, you know, appending. Again, we are just getting into really broad types of things.

And these can be done, say, with email, I can append with email. So if I have the agreement in the body of an email, and I append somebody's identity validation, that's one way of doing it. If I stick a signature in a PDF, that's another way of doing it.

If I -- you know, the things that they have suggested could be, you know, identity validations are things like

sounds.  My voice saying "I am Neil Warren," you know, somehow appending that to the document.  I mean, we have just got incredible breadth.

And, you know, with respect, I don't think that it's a simple -- and I also don't think that it is necessarily a fact question.  Because most of these cases are decided without, sort of, trial, you know, or expert.  And if it's going to go to a jury -- actually, I know Your Honor, I think, just last week on the *Fortinet* case, discussed what goes into whether or not the indefiniteness issue under *Williamson* goes to a jury.  And, you know, that really -- it requires questions of fact.

And this seems much more -- because there's literally no disclosure in the specification, I don't see an issue of genuine material fact at issue.

**THE COURT:**  What is your response to that?

**MR. HURT:**  I think there's -- there's no record on their burden of proof.  So Mr. Warren keeps talking about how broad "attaching" is, and -- but, you know, the actual claim language, to me, is not that broad, and there's no record that it's as broad as Mr. Warren is suggesting it is.

I have a hard time understanding how a narrow -- you know, I've said that this claim limitation is just like an if-then, and to me that's how I read it.  And I don't understand how a narrower function somehow makes that claim term so broad that no one can understand that it's structural.

I would note from my background that a "whatever" clause, there are things called "while until loops" that are very similar to if-then statements that can track every time something happens and attaching happens.

And I think the *Smartflash* case dealt with this. Mr. Warren accused me of saying something false, because the court says the term is not merely code. That's true. But the term here (Indicating) is not merely "code segment." And the court in *Smartflash* said (As read):

"There is substantial additional language describing the operation of the components at issue and the interaction with other components."

What were those limitations for the code limitations? One of them was "code to evaluate data to determine access." To me, that seems a lot broader than when you are receiving data, you attach that data onto a document. That seems much more narrow, much more specific, and much more straightforward than "code to evaluate use status data and then make a determination based on that data."

I think if -- if that is sufficient -- and Judge Gilstrap concluded in *Smartflash* that it was -- that that was sufficient linkage to other claim terms, and the use of the term "code" was sufficient structure, based on expert declarations.

We put forward evidence of dictionary definitions of "code

segment" that were unrebutted in the record, that the court found connoted software structure, that the Defendants have never challenged.

The only basis of this motion is the presumption dropped from a strong one to just a presumption (Indicating).  But it's still their burden to show how it applies.

**THE COURT:**  What's your response to --

**MR. HURT:**  Sure.

**THE COURT:**  -- Mr. Warren's argument that, you know, the attaching, the identity validation has so many ways that it can occur, that given the variety and the breadth of ways that that can be implemented, that at some point we are now requiring to rely upon engineers' creativity, and it loses sufficient structure?

So, the number of ways it can be implemented, for instance.  What's your response to that?

**MR. HURT:**  I disagree with that.  And I know I keep saying it.  But there's no record to back up what Mr. Warren is saying.

**THE COURT:**  If there were such a record, what would your legal view be?

**MR. HURT:**  My legal view would be as long as one of ordinary skill in the art can understand that this is sufficient structure, that code for doing -- for when you receive data you attach other data, that there's sufficient

sort of structural connotation there, then it is definite.  Or it is -- I'm sorry -- not a means-plus-function limitation.

The more ways you can implement something -- and this goes to Your Honor's question earlier -- is really an enablement question, is how -- is:  Does the specification enable all of the ways that this limitation can be -- can be implemented?

But in terms of is it structural or not, or it is it purely functional or not, the idea that well, this operation could be done a number of different ways, I don't see that as bearing on something that is purely functional.

We could have a claim term, a screw or a fastener for attaching two things.  And that could be potentially a screw or a Phillips-head screw or a nail or all of these other things.  And you could take everything Mr. Warren said in the software space, take it to the tangible space for mechanical inventions, but it would still fail, and the Federal Circuit as held the terms like "detent mechanism" and others are sufficient structures, because even though they cover a broad class of structures, it still connotes structure to one of ordinary skill in the art.

Judge Gilstrap found that "code" did exactly that in the *Smartflash* case.

The one distinguishment that Mr. Warren mentioned is not a distinguishment.  And I think their motion needs to be denied.

THE COURT:  Is there something in your slides that

would be relevant, particularly relevant to what we have just talked about, that I should be aware of?

MR. HURT: Sure. So, on Slide 13 -- actually -- I'm sorry, Your Honor.

Slides 12 and 13 analogize the limitation -- Sections 12, 13 and 14, analogize the limitations at issue in this case to the ones that Judge Gilstrap found.

THE COURT: So it's *Smartflash*.

MR. HURT: *Smartflash* case.

THE COURT: Okay.

MR. HURT: I think the other -- as a general proposition on the legal aspect of this, as Your Honor I'm sure is aware, earlier this year the Supreme Court held in the *Teva* decision that claim construction is now a mixed question. That was a definite mis-decision. So this idea that it's a pure question of law that the Court can -- has to decide without the benefit of a full record is not necessarily accurate.

However, if Your Honor is inclined to agree with *Adobe* that the Court can resolve the merits of this now, they haven't put forth the record that would entitle them to the relief that they want. So we would request that the Court just deny their motion.

THE COURT: All right. Mr. Warren, besides Slide 8, is there something else here that's particularly relevant to

what we've been talking about that I should --

MR. WARREN: The series of slides after 8 up until the next -- actually, there is something I would like to direct Your Honor to.

THE COURT: Yeah.

MR. WARREN: And that is the statements that both the Court and the Plaintiff previously made, analogizing this case to *Williamson*. And those are at Slides 21 and 23, in particular.

And if we look at Slide 21, again, the way the briefing shaped out here is when we did the first round of claim construction briefing, it was the pre-en banc decision, and it supported the Plaintiff's position. So they were all in *on Williamson*: Hey, this case is *Williamson*. It's exactly like *Williamson*.

THE COURT: I'm aware of that, and that's why I'm inclined to grant reconsideration. And I'm into the realm now of: Now what do we do?

MR. WARREN: Well, my point is that their argument was that the factual issue was the same. It's not that the legal standard was the same.

Certainly, under the reconsideration standard, we are in, you know, a change of law. And so there is, you know, a basis for the predicate for reconsideration.

My point here is that they analogized "module" and the

module in *Williamson* to the "code segment" at issue here, as a factual basis.  Both the Court and the Plaintiff did.

The Plaintiff said that this case presents the, quote, "same issue," you know --

**THE COURT:**  It's like making a facial argument that "module" is good enough, we don't have to get into the niceties and the degree of operation and the relationship and how it works together.

And now it appears that one does need to look deeper than just "module," and that's what we've been talking about.

**MR. WARREN:**  I think it is striking, at least, to note to Your Honor that previously this case, Plaintiff sought as identical factually to *Williamson* and now that *Williamson* has flipped, it's now very, very different.

I think that that should at least come into consideration when we deal with how the Plaintiff's arguments are read in terms of distinguishing the facts of *Williamson* at this point. Because, you know, the claim at issue in *Williamson* hasn't changed.

So if *Williamson* used to present the same issue, and was, quote, "virtually identical," the module in *Williamson* was virtually identical is what they said, and the court said something similar, they said that the "module" term is similar, the fact that the law now changed and the holding of that case flipped, the facts haven't changed.

So to now say that:  Oh, they're very different, I mean I don't think that they are any different.  And I don't think that -- you know, when we briefed this originally we conceded -- we had to deal with *Williamson*.  We said, "Listen, this thing is going to be en banc.  We expect it to go en banc.  We understand that's the current state of the law, but we expect it to change."  And it did.

The one other point I did want to make, at the end, Counsel talked about the *Teva* case.  I understood him to say that claim construction is now a mixed question of law and fact --

THE COURT:  Well, it can be.

MR. WARREN:  Certainly, what *Teva* said is that if you have expert declarations and facts and stuff, that you get deferential review on the factual underpinnings, but the question is still a question of law, of claim construction; and whether 112, 6 applies is a question of law.  It's determined, the threshold question of whether 112, 6 applies, is by the preponderance of the evidence.  It's only clear and convincing once you get into the indefiniteness and validity issue.

So by a preponderance of the evidence, given the record, you know, in looking at the specification, you know, are we -- there is a presumption, but it's no longer a strong presumption.

THE COURT:  No, there is a presumption.  It's just -- you're right.

MR. WARREN:  But it's rebutted by -- it's determined on the preponderance of the evidence.  So 51 percent, and we rebut the presumption.

And so, on this record, I mean, when you put the evidence on a scale, your -- Counsel is right.  We didn't submit expert declarations.  But that's because there is nothing in the specification.

We're not in the realm where we need somebody to construe the specification in the claims from a person of skill in the art's perspective, necessarily, because there's nothing there.  It's merely the words of the claim.

And that's what the Court construes every day in claim construction.  They read the scope -- words of the claim, they read the specification, and they understand the scope.  And they rule on it, as a matter of law.

THE COURT:  All right.

I'll give you one minute to --

MR. HURT:  Sure.  I think Your Honor hit the nail on the head.  We're here today because the case law changed.

And if the Defendants want to take what I said in front of Judge Yeakel and twist it around and make me look bad, they can do it.  But the law is the law.  And post-*Williamson*, the *Smartflash* case, Judge Gilstrap showed why Judge Yeakel was

absolutely right in this case in denying their motion.

And in terms of -- well, it's very interesting for Mr. Warren to mention the preponderance of the evidence and a presumption, and then mention that this is a pure legal question, because there is absolutely no evidence that they brought forward that would suggest that the term "code" is not sufficient structure, and that those limitations inside of the code are so broad and untethered that the Court should rewrite that claim as a means-plus-function limitation.

Thank you, Your Honor.

**THE COURT:** All right. I will take the motion for reconsideration under submission, and get out a ruling, I hope fairly soon.

Do we have a CMC scheduled in this case?

**THE CLERK:** Yes. December 10th.

**THE COURT:** All right. Just to give me a preview, are there -- in terms of possible ADR, is there -- have you had any kind of discussion as to any time, or form for that?

**MR. HURT:** Sure. We discussed it briefly before the hearing. I'm waiting to hear back from my client. We'll submit the papers, I believe it's the end of this week.

But it sounded like -- I don't want to put words in Mr. Warren's mouth, but we'll have an agreement on the framework we would want to utilize.

**MR. WARREN:** I agree.

THE COURT: All right.  I'll get to work on my end, and we'll see you at the CMC.

MR. HURT:  Thank you, Your Honor.

MR. WARREN:  Thank Your Honor.

(Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/  Belle Ball*_____

Wednesday, October 5, 2016

Belle Ball, CSR 8785, CRR, RDR